**SEA-LAND SERVICE, INC., Plaintiff,**

v.

**EAGLE TERMINAL TANKERS, INC., Defendant.**

No. 514-73C2.

United States District Court,
W. D. Washington,
Seattle Division.

Sept. 8, 1977.

Vincent R. Larson, of Riddell, Williams, Ivie, Bullitt & Walkinshaw, Seattle, Wash., for plaintiff.

Edward C. Biele, Bogle & Gates, Seattle, Wash., for defendant.

ORDER MODIFYING AND APPROVING REPORT OF THE SPECIAL MASTER

BEEKS, District Judge.

S.S. SEATTLE, owned by Sea-Land Service, Inc. (Sea-Land), and S.T. EAGLE COURIER, owned by Eagle Terminal Tankers, Inc. (Eagle), collided on August 7, 1968

off Vancouver Island, B.C. SEATTLE was loaded with cargo containers while EAGLE COURIER was in ballast. The parties agreed to equal fault with all provable damages to be shared equally. They agreed to all damages sustained by Eagle in the · amount of $1,388,465 and damages sustained by Sea-Land of $991,926. However, the parties could not agree on $870,114 of the damages claimed by Sea-Land.

A special master was appointed to make findings of fact and conclusions of law regarding the disputed damages. After considering the claims made by both parties, the Special Master submitted a preliminary draft report under F.R.Civ.P. 53(e)(5) to counsel for their suggested changes. The Special Master's final report incorporates changes deemed by him to be valid.

Both parties have filed objections to the report. The Court has reviewed the report and has considered the parties' objections thereto. Except as indicated below the objections are overruled. .

## I. DEFENDANT'S OBJECTION TO THE DETENTION LOSS FINDING

■ Eagle, in its "Memorandum on Commissioner's Final Report," objects to the amount of detention loss damages found by the Special Master. Eagle contends that the number of northbound (N/B) containers used by the Special Master to compute the net revenue lost by Sea-Land during the detention of SEATTLE should be reduced from 1200 (the number of containers SEATTLE could have carried during the four sailings lost during detention) to at least 697. This objection· is overruled.

The Special Master based his detention damage computation on the two voyages of the SEATTLE before and after the collision. During these four "measuring stick" voyages, the SEATTLE actually carried a total of 1166 N/B containers. However, the Special Master used 1200 N/B containers to determine the net revenue lost by the SEATTLE during detention; SEATTLE was designed to carry 300 containers per voyage so it could have carried 1200 containers during the "measuring stick" voyages.

At the time of the collision, Sea-Land's two vessel Alaskan fleet had established a continuous "pipeline" of cargo between Seattle and Alaska. During the peak season, spring to late fall, SEATTLE carried an average of 304 N/B containers per voyage. On occasion SEATTLE could accommodate more than 300 containers per voyage due to varying container sizes and modified loading procedures. In fact, SEATTLE carried 311 and 309 N/B containers respectively on the two voyages immediately prior to the collision.

The detention of the SEATTLE disrupted the flow of cargo through this "pipeline" and its regular customers sought to assure delivery by re-routing their cargo. This caused a time lag of several weeks which was apparently reflected in the reduced number of N/B containers SEATTLE carried on the two "measuring stick" voyages after the collision. On these peak-season voyages SEATTLE carried 257 and 289 N/B containers respectively when she should have been carrying approximately 304.

With these facts in mind, the use of 1200 containers (design capacity) as a basis for determining net revenue loss, rather than a lesser number, appears fair and equitable. It gives Sea-Land credit for the revenue it could have reasonably expected the SEATTLE to produce during August and September of 1968. The procedure used by the Special Master to determine detention damages is found to be reasonable.

## II. OBJECTIONS REGARDING THE AWARD OF PRE–JUDGMENT INTEREST

### A. DEFENDANT'S OBJECTION TO THE AWARD

■ Eagle contends that pre-judgment interest should be denied in a mutual fault collision case because the amount of the ultimate award is uncertain until the date of entry of judgment and it is uncertain which party will bear the ultimate liability until that time. The admiralty rule is contra and defendant's objection is overruled.

■ The rule in admiralty is that pre-judgment interest must be awarded in collision cases unless the court finds, within its discretion, that peculiar facts or circumstances justify its denial. *Grace Line, Inc. v. Todd Shipyards Corp.*, 500 F.2d 361 (9th Cir. 1974); *THE PRESIDENT MADISON*, 91 F.2d 835 (9th Cir. 1937). "The total loss of a vessel cannot be fully compensated by payment years after of no more than her value at her sinking or destruction. The owner has neither the use of the vessel nor her money equivalent during this period, and interest on her then value is necessary for just compensation. So also with moneys expended in repairs or replacements." *THE PRESIDENT MADISON*, 91 F.2d at 845.

There appear to be no peculiar facts or circumstances which justify the denial of pre-judgment interest. The Special Master has found that there has been no unjustifiable delay by Sea-Land in prosecuting its claims. Nor does the mutual fault aspect of this case amount to a peculiar fact or circumstance. The policy behind awarding pre-judgment interest is based on the courts' desire to provide full and fair compensation to the damaged party. The fact that the ultimate amount owed in a mutual fault collision case is often unliquidated and uncertain until the moment of judgment does not undermine this policy. Other courts have faced similar issues in non-mutual fault cases and have found this policy to be applicable. *See, e. g., Norfolk Shipbuilding & Drydock v. M/Y LA BELLE SIMONE*, 537 F.2d 1201 (4th Cir. 1976) (award of 12% pre-judgment interest upheld although the ultimate amount of damages to be awarded on a claim by shipyard on a contract to repair and a counterclaim by yacht-owner for off-set was uncertain and unliquidated until entry of judgment).

Therefore, Eagle's objection to the award of pre-judgment interest is overruled.

## B. PLAINTIFF'S OBJECTION TO THE RATE OF PRE–JUDGMENT INTEREST

Sea-Land objects to the Special Master's finding that pre-judgment interest be awarded at the rate of 6% per annum, as prescribed by the forum state. This objection is sustained on two grounds: policy and precedent.

■ The purpose of awarding pre-judgment interest is to insure that the injured party is fully and fairly compensated for his loss. "Interest here, as in ordinary business transactions, is the usual and ordinary method of making full restitution. . . . [T]o deny interest . . . is to allow the tort-feasor the use of moneys belonging, in common parlance, to the party he has injured." *THE PRESIDENT MADISON*, 91 F.2d at 845. An award of 6% interest is not realistic in the money-market of today. The mean prime rate for the years 1968 to the present is in excess of 8%. Thus, to award interest at a rate less than 8% is to deny Sea-Land "full restitution."

■ Furthermore, in admiralty the rate of pre-judgment interest to be awarded is within the discretion of the trial court in its effort to award full and fair compensation. *Norfolk Shipbuilding & Drydock v. M/Y LA BELLE SIMONE*, 537 F.2d at 1205, n.2. The court's discretion is not to be bound by state law. *Ore Carriers of Liberia, Inc. v. Navigen Co.*, 305 F.Supp. 895, 898 (S.D.N.Y. 1969), *aff'd*, 435 F.2d 549 (2d Cir. 1970) (per curiam). "The maritime law concerning 'restitutio in integrum' must be uniform and not vary with the local laws of different ports. While this may warrant the choice of a local rate of interest, it cannot destroy the uniformity of the fundamental law of restitution in admiralty." *THE PRESIDENT MADISON*, 91 F.2d at 847. To be bound by the state prescribed rate of interest is to destroy such uniformity.

In addition, the award of pre-judgment interest at a rate lower than that prevailing on the money market may tend to discourage the prompt disposition of litigation because of the obvious benefit to the debtor.

## III. POST–JUDGMENT INTEREST

■ The Special Master has recommended that post-judgment interest be

awarded at the rate of 8% per annum. The recommendation but not the rationale is accepted and adopted. The powers of this Court in awarding post-judgment interest are controlled by statute. Under 28 U.S.C. § 1961, interest shall be calculated from the date of the entry of judgment at the rate allowed by state law. The rate of post-judgment interest prescribed in Washington is 8%. RCWA 4.56.110(2) (West Supp.1976).

Accordingly, the report of the Special Master is modified as specified above and, as so modified, it is adopted by the Court. It is further,

Ordered that a hearing be held on September 22, 1977 at 1000 hours for the purpose of determining the fee of the Special Master.