472 F.Supp. 371 (1979)
FEDERAL BARGE LINES, INC., a corp., and Consolidated Grain & Barge Co., a corp., Plaintiffs,
v.
REPUBLIC MARINE INC., Defendant.
No. 78-101A(1).
United States District Court, E. D. Missouri, E. D.
June 11, 1979.
Gary T. Sacks, Goldstein & Price, St. Louis, Mo., for plaintiffs.
John S. Sandberg, Coburn, Croft, Shepherd, Herzog & Putzell, St. Louis, Mo., for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
MEREDITH, Chief Judge.
This matter was tried to the Court. The Court has been duly advised by testimony, exhibits, and briefs of the parties.

FINDINGS OF FACT
1. The parties are all corporations duly organized and existing under the law.
*372 2. Plaintiff Federal Barge Lines, Inc., was the owner and operator of barge S-667, an unmanned, unpowered, steel-hulled river barge which contained a rake bow and a square stern and was 195 feet long, 35 feet wide, and 12 feet deep.
3. Plaintiff Consolidated Grain and Barge Company was the owner pro hac vice of barge GMT-540, an unmanned, unpowered, steel-hulled river barge which contained a rake bow and a square stern and was 195 feet long, 35 feet wide, and 12 feet deep.
4. Defendant Republic Marine, Inc., was the owner and operator of the M/V SAM B. THOMAS, a river towboat powered by three diesel engines which developed a total of 4,425 horsepower and was 118 feet long, 38 feet wide, and 7½ feet deep.
5. On May 19, 1976, the M/V Keystone of Central Rivers, Inc., delivered barges GMT-540 and S-667 to Mile 354 on the Missouri River. Both of the said barges were at that time loaded with wheat and were moored with two other barges to the bank of the Missouri River awaiting pick-up by the M/V SAM B. THOMAS which was to tow the barges to the St. Louis area.
6. On or about 11:25 p. m. on May 25, 1976, the M/V SAM B. THOMAS arrived at Mile 354 for the purpose of picking up the barges. At that time John P. Rowan was the pilot of the M/V SAM B. THOMAS. During the process of making up the tow the barges broke loose from their moorings during the early morning hours of May 26, 1976, and drifted downstream, striking a bridge.
7. As a result of the breakaway, plaintiff Consolidated Grain & Barge Company sustained damages to barge GMT-540 in the amount of $13,450.30, which amount was paid on September 28, 1976.
8. Federal Barge Lines, Inc., sustained damages to barge S-667 in the amount of $18,811.50, which amount was paid on September 7, 1976.
9. John P. Rowan has been a pilot for 18-19 years. His experience has been on the lower Mississippi where the current is not as strong as it is in the Missouri River. His experience had been primarily with harbor vessels in the New Orleans area using 800-900 horsepower, and the largest vessel he had ever piloted prior to this incident was 3200 horsepower. Because of his inexperience on the Missouri River and because of the inexperience of Capt. Kiser, who was the master of the vessel but not in charge at the time of the incident, the services of an experienced river pilot, Robert E. Schooler, were employed. Neither Kiser nor Schooler were on deck at the time this incident occurred.
10. Rowan testified that at the time he came alongside the moored barges he looked at the upstream cable mooring these barges and the cable appeared to be adequate but he did not place a man aboard the moored barges nor on the shore of the Missouri River to make a careful examination of the cable mooring the barges. Pilot Rowan first tied an additional barge to the port side of the two upstream barges. He then backed off and took the inside barge of the two downstream barges, pulled it out of the moored barges, and was in the process of backing it upstream and had passed the moored barges when he observed that the barges had broken loose. Thereafter, he spent some two days and two nights getting the barges rounded up and moored together, at which time he stated that he saw an old wire cable about 15 feet from the tree which was broken and rusted. He blames the rusted cable as the cause of the breakaway.
11. Fred Harrigill was a seaman aboard the SAM B. THOMAS. He was listed as an additional witness by the defendant on the day of trial and was permitted to testify over the strenuous objection of the plaintiffs because his name had not been listed as a witness in the pretrial compliance order. He testified that he observed the rusty cable. However, neither Pilot Rowan nor Seaman Harrigill were certain that the wire which they observed was the wire which had moored the barges in question.
12. Pilot Rowan filled out an accident report shortly after the breakaway. He did *373 not make any mention of the rusty cable. He also testified that he threw the cable away but he did not report this to either Captain Kiser or to Schooler. There was no mention in the vessel's log of the rusty cable. This Court does not give any credence to the testimony concerning the rusty cable given by either Rowan or Harrigill.
13. Robert E. Schooler testified by deposition that in his opinion the reason the cable broke was because the M/V SAM B. THOMAS was on several occasions surging near the fleet at full speed which caused the water to suck out from underneath the barges and when it came back in the barges were placing an additional stress on the cable. The surging of the barges in his opinion was bad seamanship and caused the cable to break. Edwin E. Kiser also testified by deposition and his testimony was substantially the same as Schooler's, that the cause of the breakaway of the barges was by revving up the motors of the SAM B. THOMAS near the barges.
14. This Court is of the opinion that the evidence in this case shows the defendant was negligent in the following respects:
A. No inspections were made of the shore cable by any crew member of the M/V SAM B. THOMAS prior to adding one barge to the outside of the fleet and prior to removal of the downstream shoreward barge.
B. No additional cables were added as extra support for the weight of the additional barge and the extra strain caused by the movements of the SAM B. THOMAS near the barges.
C. The handling of the M/V SAM B. THOMAS in the vicinity of the moored barges was done in an improper manner.

CONCLUSIONS OF LAW
1. This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. § 1333.
2. The Court finds that plaintiff Consolidated Grain & Barge Company is entitled to a judgment against the defendant in the amount of $13,450.30 plus prejudgment interest from September 28, 1976.
3. The Court finds that plaintiff Federal Barge Lines is entitled to a judgment against the defendant in the amount of $18,811.50 plus prejudgment interest from September 7, 1976.
4. The question of prejudgment interest is one which the Eighth Circuit has held that plaintiff is entitled to from the date payment of damages is made. Mid-America Transportation Company, Inc. v. Cargo Carriers, Inc., 480 F.2d 1071 (8th Cir. 1973). Six percent is insufficient. The maximum rate at which an individual is charged in the state of Missouri is 10 percent per annum, and has been during this period of time, but the prime rate has exceeded this amount during this period of time. There is no limit to the interest rate which a lender may charge a corporation. Accordingly, this Court will award prejudgment interest at the rate of 10 percent per annum for both plaintiffs from the date the payment of damages was made. Complaint of M/V Vulcan, 553 F.2d 489 (5th Cir. 1977) (12 percent); Sea-Land Serv., Inc. v. Eagle Terminal Tankers, Inc., 443 F.Supp. 532 (W.D.Wash.1977) (8 percent).