**DILLINGHAM SHIPYARD, an affiliate of Dillingham Corporation, and Continental Insurance Company, Plaintiffs-Appellees and Cross-Appellants,**

v.

**ASSOCIATED INSULATION CO., LTD., Defendant and Third-Party Plaintiff-Appellant and Cross-Appellee,**

v.

**UNITED STATES of America, Third-Party Defendant-Appellee and Cross-Appellant.**

Nos. 78–1708, 78–1805 and 78–2229.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1980.

Decided July 6, 1981.

Garry P. McMurry, Rankin, McMurry, Osburn, Vavrosky & Doherty, Portland, Or., argued for Dillingham; Patrick J. Doherty and Stoddard D. Jones, Portland, Or., on brief.

Edmund Burke, Hamilton, Gibson, Nickelson, Rush & Moore, Honolulu, Hawaii, for Associated Insulation Co.

Norman J. Ronneberg, Jr., Admiralty & Shipping Sec., San Francisco, Cal., for United States.

Before KENNEDY, HUG and SCHROEDER, Circuit Judges.

HUG, Circuit Judge:

This is an action under an indemnity agreement for damages resulting from an explosion that occurred aboard the United States Coast Guard Cutter Mellon (MELLON), while a sonar system was being installed at the Dillingham Shipyard. Associated Insulation Co. was employed by Dillingham as a subcontractor to install dampening asbestos tile in the lower ammunition handling room of the ship in order to improve the sonar performance. The explosion occurred as a result of a leak in a propane gas tank used by Associated and left over a weekend in the the ammunition handling room. Dillingham made the repairs to the ship on the basis of a provision in its contract with the Coast Guard wherein Dillingham had agreed to "be responsible for and make good at its own cost and expense any and all loss of or damage of whatsoever nature to the vessel ... arising

... out of ... the performance of the work."[1]

Plaintiffs, Dillingham Shipyard and Continental Insurance Company (Dillingham), brought suit against defendant Associated Insulation Company (Associated) for damages arising from the explosion aboard the ship. Dillingham's principal theory of recovery was founded on an indemnity provision in its contract with Associated, wherein Associated agreed to indemnify and hold harmless Dillingham from any damages, costs and expenses that Dillingham might incur as a result of Associated's negligence.[2] Associated impleaded the United States of America (Coast Guard) as a third-party defendant, alleging that it had caused or contributed to the damages through its negligence. After a non-jury trial, the district court held that Associated was solely responsible for the explosion and entered judgment in favor of Dillingham and the Coast Guard.

Associated appeals, contending that:

1. Dillingham was not legally obligated to make the repairs for the Coast Guard and that Dillingham and its insurance carrier were thus volunteers not entitled to recover from Associated under the indemnity provision.

2. The Coast Guard was contributorily negligent and therefore responsible for the portion of the damages caused by its negligence.

3. The damages awarded to Dillingham for overhead expenses and prejudgment interest were improper.

Dillingham cross-appeals, contending that the district court was in error in failing to allow recovery for lost profits and for overhead expenses attributed to the corporate headquarters, and in failing to award attorneys' fees.

The Coast Guard also cross-appeals, contending the district court erred in failing to award costs for certain travel expenses and copying costs.

We affirm the judgment in part, reverse in part and remand the case to the district court.

I

*Liability under the Indemnity Provision*

■ The district court made a factual finding after hearing all of the evidence pertaining to the explosion. The court found that the explosion was caused solely by the negligence of Associated. The evidence revealed that employees of Associat-

1. The relevant provision of the Coast Guard-Dillingham contract (Section 10(b) of the General Provisions) provided:

"The contractor shall be responsible for and make good at his own cost and expense any and all loss of or damage of whatsoever nature to the vessel (or part thereof), its equipment, moveable stores and cargo, and Government-owned materials and equipment for the repair, completion, alteration of or addition to the vessel in the possession of the contractor, whether at the plant or elsewhere, arising or growing out of the performance of the work, except where the contractor can affirmatively show that such loss or damage was due to causes beyond the contractor's control, was proximately caused by the fault or negligence of agents or employees of the Government acting within the scope of their authority, or which loss or damage the contractor by exercise of reasonable care was unable to prevent...."

2. The relevant provision of the Dillingham-Associated contract (Paragraph 13) provided:

*LIABILITY FOR INJURY AND DAMAGES*: Subcontractor shall indemnify and defend and save harmless Owner and Contractor, and each of them, from and against any and all suits, actions, legal or administrative proceedings, claims, debts, demands, damages, consequential damages, liabilities, interest, attorney's fees, costs and expenses of whatsoever kind or nature and whether they may arise before or after completion of Subcontractor's work hereunder which are in any manner directly or indirectly caused, occasioned or contributed to in whole or in part, or claimed to be caused, occasioned, or contributed to in whole or in part, through any act, omission, fault or negligence whether active or passive of Subcontractor, or anyone acting under its direction, control, or on its behalf in connection with or incident to the work, without limiting the generality of the foregoing, the same shall include injury or death to any person or persons and damage to any property, regardless of where located, including the property of Owner and Contractor.

ed had been working in the lower ammunition handling room of the ship for three days before the Labor Day weekend with a large propane tank and torch used in the process of installing the asbestos tile. On Tuesday, after the Labor Day weekend, the Associated employees came to work one-half hour before the Dillingham employees. One employee entered the lower ammunition handling room and five minutes later the explosion occurred. A fireman later discovered that a valve on the propane tank had been left open. There is no doubt that this was the cause of the explosion. Associated argues that the Coast Guard was responsible, in whole or in part, contending that it had a continuing duty to inspect the compartment of the vessel. The district court found that the Coast Guard performed its duty under these circumstances when it inspected the compartment and turned it over to Associated in a gas-free condition, and from then on it was Associated's responsibility not to pollute the space.

The district court found no negligence on the part of Dillingham or the Coast Guard and that the explosion was caused solely by the negligence of Associated. The district court's findings regarding negligence and proximate cause are to be reviewed under the clearly erroneous standard. *See McCune v. F. Alioto Fish Company*, 597 F.2d 1244, 1252 (9th Cir. 1979); *Hanson v. United States*, 475 F.2d 771 (9th Cir. 1973). Under the clearly erroneous standard the appellate court is bound to accept the district court's finding unless the appellate court, after considering all of the evidence, is "left with the definite and firm conviction that a mistake has been committed." *McCune* 597 F.2d at 1252, *quoting United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). In this case, the finding of the district court is amply supported by the evidence.

■ Having thus concluded that the explosion was caused by the sole negligence of Associated, it is clear that Dillingham was liable to the Coast Guard for the damage to the ship as a result of the negligence of Associated, its subcontractor.[3] Therefore, Dillingham proceeded quite properly to repair the ship in accordance with Section 10(b) of the Coast Guard-Dillingham contract. Because Dillingham performed the repairs pursuant to its contractual obligation with the Coast Guard, it follows that Dillingham did not act as a volunteer in making the repairs. *See American Commercial Lines, Inc. v. The Valley Line Company*, 529 F.2d 921, 924 (8th Cir. 1976). *See also* 92 C.J.S. *Volunteer*, pp. 1032–33 (1955). Associated, in turn, was required to indemnify Dillingham under Paragraph 13 of the Dillingham-Associated contract.[4]

Associated complains that it was not afforded an opportunity to defend the Coast Guard claim before Dillingham made the repairs. The evidence reveals that Associated was notified by letter that Dillingham intended to proceed with the repairs, the cost of which would be recovered from Associated at a later date. Associated did not reply or take other action to assert the invalidity of the Coast Guard's claim. In any event, Associated has had a full opportunity, in this action, to litigate all defenses that may have existed to the Coast Guard's claim.

II

*Elements of the Indemnity Award*

Associated contends that Dillingham should not be allowed to recover for its local overhead expenses in making the repairs. Dillingham contends that the district court erred first, in failing to include in the indemnity award the allocated overhead expenses of the corporate headquarters attributable to the repair job; second, in failing to include a reasonable profit figure on the job; and third, in failing to allow attorneys' fees. The questions before us are a matter

---

**3.** Paragraph 4(b) of the General Provisions of the Coast Guard-Dillingham contract provided:

"The contractor shall be responsible to the Government for acts and omissions of his own employees, and of subcontractors and their employees...."

**4.** See footnote 2 for the full provision.

of contract interpretation; we must decide whether these costs and expenses fall within the scope of the indemnity agreement.

■ The parties did not present, and the district court did not consider, extrinsic evidence of the circumstances surrounding the making of the contract. Therefore, the dispute concerns the proper interpretation of language on the face of the contract, which is a matter of law fully reviewable by this court. *See Energy Oils, Inc. v. Montana Power Co.,* 626 F.2d 731, 734 (9th Cir. 1980); *Kittitas Reclamation District v. Sunnyside Valley Irrigation District,* 626 F.2d 95, 98 (9th Cir. 1980). Our ultimate task is to determine the intent of the contracting parties. In this opinion we refer to decisions involving the costs and expenses allowed in damage awards in negligence actions where no indemnity agreement exists. These decisions concerning costs and expenses generally allowed as a part of damage awards in negligence actions do not constitute precedent that is directly applicable, but they are relevant to the question of the parties' reasonable expectations in this indemnity agreement.

### 1. *Local Overhead Expenses*

■ Associated argues that the district court erred in ordering indemnification for the overhead expenses of Dillingham Shipyard and Dillingham's Pacific Division, which totalled $54,018.00. Associated does not contest the finding of the district court that the overhead expenses were accurately calculated and properly apportioned. Associated, in its indemnity agreement, agreed to "indemnify . . . and save harmless (Dillingham) from and against all . . . damages . . . costs and expenses of whatsoever kind or nature . . . caused . . . [by the] negligence . . . of (Associated)." Overhead is a recognized element of the cost to a contractor in performing a job. Had Dillingham utilized its work force and capital assets on another contract, the overhead would have been apportioned to that job as a part of

the contract price. If Dillingham had hired an independent contractor to repair the damages caused by the explosion, the cost of such repair work undoubtedly would have reflected the independent contractor's overhead expenses. We see no reason why Dillingham should not be reimbursed for its overhead expenses because it decided to undertake the repair work itself. We conclude that the district court correctly ruled that these overhead expenses are recoverable. *Cf. Freeport Sulphur Co. v. S/S Hermosa,* 526 F.2d 300, 304 (5th Cir. 1976) (*rehearing en banc vacated after settlement*) (damages for negligence); *Baltimore and Ohio R. Co. v. Commercial Transport, Inc.,* 273 F.2d 447, 449 (7th Cir. 1960) (damages for negligence); *Ford Motor Co. v. Bradley Transportation Co.,* 174 F.2d 192, 198 (6th Cir. 1949) (damages for negligence).

### 2. *Corporate Headquarters' Overhead Expenses*

The district court denied recovery of $4,412 reflecting corporate headquarters' overhead expenses on the ground that they were "too remote." We agree with Dillingham's argument that the district court erred in denying recovery of these expenses, because such expenses must be included in the judgment in order to compensate Dillingham fully for its costs and expenses in making the repairs.

At trial, Associated agreed that the $4,412 figure accurately reflected the amount of money attributable as Dillingham's corporate headquarters' overhead expenses for the repair work done on the MELLON. As noted above, Associated agreed to indemnify Dillingham for all damages, costs and expenses of whatsoever kind and nature that Dillingham incurred as a result of the negligence of Associated. These overhead expenses, even though not as directly attributable to the job, were legitimate expenses which the evidence revealed were routinely apportioned to the Dillingham Shipyard to be recovered

through the contracts it performed. We therefore conclude that these overhead expenses should be allowed for the same reasons the general overhead expenses were allowed. We thus reverse the district court's decision disallowing reimbursement for this element of expenses.

### 3. Profits

Dillingham asserts that the district court erred in denying it recovery of profit in the amount of $22,500 for the repair work it performed on the MELLON. This represents 8.7% of the repair bill. The amount of the profits claimed is not contested; in fact the parties stipulated as to the accuracy of that figure. The issue is whether any profit is within the scope of the indemnity agreement.

In negligence actions, when the party seeking recovery made the repairs, courts have expressed conflicting views on the question whether profits should be awarded as an element of damages. One view is represented by *Crain Brothers, Inc. v. Duquesne Slag Products Co.*, 273 F.2d 948, 952–53 (3rd Cir. 1959), relied upon by the district court. In that case, Crain had suffered damage to its barges as a result of the negligence of Duquesne. Crain did the salvage and repair work on its own barges and claimed as damages the itemized cost and an additional percentage for profit. In disallowing the claim for profit, the court stated:

> In support of the claim for the allowance of a profit on this operation it is argued that if an independent contractor had performed this work for Crain, an item of profit would properly have been included in the charge and would have constituted an element of damages recoverable by Crain from defendant. But the reason that Crain could have recovered this item is that its actual loss would have been the full amount charged by the independent contractor, including the contractor's profit. On the other hand, performing the work itself, Crain was out-

of-pocket only the cost of the operation. Crain is entitled to be compensated fully for its losses and expenses as a result of the accident in suit, not to make a profit on the mishap. Crain's recovery for its own salvage work must be reduced accordingly.

The other view is represented by *Bultema Dock & Dredge Co. v. Steamship David P. Thompson*, 252 F.Supp. 881 (W.D.Mich. 1966), where the libelant made the repairs to its own damaged property and the court held profits were properly included in the damage calculation. The court stated:

> Therefore, in this case, libelant is entitled to more than simply a return to the status quo. It has been established that the profit and overhead charges meet with the practice in the marine construction field. Had it been necessary for an outside company to repair the damage, the cost of such repairs would include similar charges. There is no reason to free respondent of these costs simply because the injured party is in a position to make the repairs itself. The court finds that libelant is entitled to include profit and overhead in its statement of damages.

*Id.* at 886.

We think the latter view more accurately reflects the economic reality and the reasonable expectations of Dillingham and Associated under the indemnity agreement. In our opinion, the *Crain* case improperly characterizes the nature of the claim as "a profit on the mishap." Instead, the recovery of "profit" is the reasonable return which a contractor is expected to receive as a result of devoting its business assets and resources to the repair project. If another independent contractor were to undertake the repair job, that contractor would be expected to include a reasonable profit as a part of its charges. Similarly, if Dillingham were to devote its business assets and resources to another project, it would expect to earn a reasonable profit from that contract.

Were Dillingham to be denied a profit it would result in unrecoverable damage to Dillingham since it would be deprived of the normal profit it would earn on those assets and resources. Dillingham is therefore entitled to have a profit of $22,500 included in the indemnity award.

### 4. Attorneys' Fees

Dillingham argues that the indemnity provision of the contract clearly provides that it is entitled to recover reasonable attorneys' fees for prosecuting the instant action against Associated. The district court ruled that Dillingham was only entitled to recover attorneys' fees incurred in the initial investigation and determination of its liability to the Coast Guard to make the repairs, but not the attorneys' fees incurred in this suit against Associated.

■ The general rule is that attorneys' fees are not awarded in an action to establish a right of indemnity. *See Flunker v. United States*, 528 F.2d 239, 246 (9th Cir. 1975). However, attorneys' fees are recoverable in an action to establish a right of indemnity, where the agreement so provides. *See Schroeder v. C. F. Braun & Co.*, 502 F.2d 235, 245 (7th Cir. 1974). The issue in this case is whether this agreement so provides. The language of the indemnity provision is very broad. Extracting the pertinent language it provides:

> "Subcontractor shall . . . save harmless . . . Contractor . . . from . . . all . . . attorneys' fees, costs and expenses of whatsoever kind or nature . . . which are in any manner directly or indirectly caused, occasioned or contributed to in whole or in part, through any act, omission, fault or negligence whether active or passive of Subcontractor . . . ."

The issues which were raised by Associated in this case are essentially related to the primary claim of the Coast Guard against Dillingham: (1) whether Associated, in acting as Dillingham's subcontractor, was negligent; (2) whether the Coast Guard was

negligent; and (3) the amount of damages for the repair. If Dillingham had not recognized its liability and had forced the Coast Guard to sue to collect its damages, Dillingham would have had to litigate these issues but would have been entitled to recover the attorneys' fees for doing so. Of course, Associated could have assumed the defense or could have been impleaded as a third party defendant, in which case, from a practical standpoint, Associated would have borne the burden of litigating these issues.

There was really no dispute concerning the indemnity agreement between Dillingham and Associated, except as to the liability and damages resulting from the primary claim of the Coast Guard. The attorneys' fees involved in litigating these issues relating to the primary claim would logically seem to fall within the reasonable expectation of the parties when Associated agreed to save Dillingham harmless from all attorneys' fees which were in any manner directly or indirectly caused, or contributed to, through the negligence of Associated. Dillingham should not be penalized because it recognized its liability to the Coast Guard without litigation and voluntarily took care of its obligation. This litigation has borne out the correctness of that decision. It was Associated that chose to litigate these issues concerning the primary claim of the Coast Guard and it is appropriate under the terms of its indemnity agreement that it hold Dillingham harmless from Dillingham's attorneys' fees in doing so.

### III

### Prejudgment Interest

■ Associated argues that the district court abused its discretion in granting Dillingham prejudgment interest. In admiralty, prejudgment interest must be granted unless peculiar circumstances justify its denial; whether the circumstances are sufficient to justify the denial is left to the discretion of the district court. *Grace Line, Inc. v. Todd Shipyards Corporation*, 500

F.2d 361, 366 (9th Cir. 1974). Associated correctly asserts that undue delay in the prosecution of a lawsuit constitutes grounds to deny prejudgment interest. *See The President Madison*, 91 F.2d 835, 847 (9th Cir. 1937). However, in the instant action, the district court specifically found that there was no undue delay. Because the finding of no undue delay in the prosecution of a lawsuit constitutes a finding of fact, the finding of the district court cannot be set aside unless it is clearly erroneous. *United States v. Gypsum*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *de Laurier v. San Diego Unified School District*, 588 F.2d 674, 679 (9th Cir. 1978). Our review of the record indicates that the district court correctly determined that there was no undue delay in the instant action. We therefore affirm the district court on the issue of prejudgment interest.

### IV

#### *Costs*

The Coast Guard argues that the district court erred in not granting certain travel expenses for its witnesses and also for not granting the costs of obtaining copies of certain deposition transcripts. We conclude that the district court did not abuse its discretion in denying the costs for the travel expenses. *See United California Bank v. THC Financial Corporation*, 557 F.2d 1351, 1361 (9th Cir. 1977). As to the costs incurred in obtaining copies of the deposition transcripts, we also conclude that the district court did not abuse its discretion in denying those costs. *See Economics Laboratory, Inc. v. Donnolo*, 612 F.2d 405, 411 (9th Cir. 1979); *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 456 (9th Cir. 1979). We affirm the district court on this issue.

AFFIRMED in part, REVERSED in part, and REMANDED for entry of judgment consistent with this opinion.