EDINBURGH ASSURANCE COMPANY, et al., Plaintiffs, Appellants and Cross-Appellees,

v.

R. L. BURNS CORP. and American Pacific International, Inc., Defendants, Appellees and Cross-Appellants.

Nos. 80–5342, 80–5387 and 80–5663.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1981.

Decided Jan. 22, 1982.

Roger A. Ferree, Charles E. Slyngstad, Jr., McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for Edinburgh Assur. Co.

Steven A. Nissen, Manatt, Phelps, Rothenberg & Tunney, Los Angeles, Cal., for American Pac. Intern.

Orville A. Armstrong, MacDonald, Halsted & Laybourne, Los Angeles, Cal., for R. L. Burns Corp.

Before GOODWIN, WALLACE and FARRIS, Circuit Judges.

WALLACE, Circuit Judge:

Edinburgh Assurance Co. (Edinburgh) appeals from a judgment entered by the district court in favor of R. L. Burns Corp. (Burns) and American Pacific International, Inc. (API). Burns and API cross-appeal on the issues of damages, fraud, and bad faith. The case involves an insurance claim for damages to an offshore oil drilling platform (the Gatto). The facts are outlined in the opinion of the district court reported at 479 F.Supp. 138 (C.D.Cal.1979). We affirm the district court's judgment except for the failure to award prejudgment interest; we reverse that part of the judgment and remand for the district court to do so.

### I. Actual Total Loss

Edinburgh claims that the district court erred in its construction of section 57(1) of the British Maritime Insurance Act of 1906 (the Act).[1] Apparently, Edinburgh chal-

---

1. For the purpose of this appeal, neither Burns nor API challenges the district court's conclusion that English law governs the construction of the indemnity contract. *Edinburgh Assurance Co. v. R. L. Burns Corp.*, 479 F.Supp. 138, 152–54 (C.D.Cal.1979). They argue that Cali-

lenges both the district court's interpretation of the Act and its application of the Act to the facts of this case.

■ First, Edinburgh challenges the district court's finding that after the Gatto was struck by the typhoon, "[i]t was no longer an off-shore drilling platform. It was a dispersed mass of scrap, a wreck. The Gatto had broken up." [2] On appeal, we will set aside a district court's findings of fact only if they are clearly erroneous. Fed.R.Civ.P. 52(a); Supplemental Rules for Certain Admiralty and Maritime Claims, Rule A. We have reviewed the entire record in this case and are not "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 651 F.2d 615, 619 (9th Cir. 1981).

■ Second, Edinburgh asserts that the district court confused the definition of "actual total loss" with that of "constructive total loss." It argues that actual total loss "does not comprehend anything short of a total, physical loss," and that the district court improperly considered the cost of reconstruction or repair of the Gatto in its determination. Contrary to Edinburgh's contention, however, we believe the district court was correct in concluding that the second definition of actual total loss under the Act, namely whether the insured item is "so damaged as to cease to be a thing of the kind insured," may properly be applied to vessels, and not just to cargo. *See George Cohen, Sons & Co. v. Standard Marine Insurance Co.*, 21 Lloyd's List L.R. 30, 33 (K.B. 1925); *Knight v. Faith*, 117 Eng.Rep. 605, 608 (Q.B. 1850). We also agree that there need not be a total, physical loss for a casualty to be considered an "actual total loss" under the Act. In its thoughtful and well-reasoned opinion, the district court adopted an intermediate position between the broad definition of actual total loss for which Burns and API argued, *i.e.*, that a thing is an actual total loss when as a practical business matter it is not worthwhile recovering and rebuilding, and the definition for which Edinburgh argued, *i.e.*, that a thing is a total loss only when it is not within the scope of present technological capacity to recover and repair. The district court concluded that a thing may cease to be a thing of the kind insured, and thus an actual total loss, even if there still exist significant, accessible physical remains.

This was a correct construction of English law. While the district court did suggest that the cost of recovering and refurbishing the thing insured may be relevant to an application of this test, any error involved there was harmless. Since we do not disturb the district court's findings of fact that it was "extremely unlikely that more than a few component parts of the [Gatto] could be used in any rebuilding of the platform," and that "the Gatto had to be considered as wreckage or as a dispersed wreck with little value other than as scrap metal," we affirm the judgment. *United States v. County of Humboldt*, 628 F.2d 549, 551 (9th Cir. 1980) (judgment affirmed on any basis supported by the record).

## II. *Damages*

■ Edinburgh challenges the legal sufficiency of the evidence supporting the district court's award of damages to Burns and API. The insurance policy issued to API and Burns provided indemnification "against costs and expenses incurred in connection with the purchase, salvage, recovery, towage etc. including insurance premiums but less the value of equipment salvaged." Edinburgh claims that certain dis-

---

fornia law governs only in order to preserve the issue should we reverse the district court's judgment. As we affirm, we do not decide the choice of law question.

**2.** While Edinburgh did not formally challenge this finding of fact, it insisted that the record did not support the conclusion that the Gatto was a total wreck and could no longer be considered a mobile drilling platform. According to Edinburgh, "[w]hether described as a 'wreck' or by any other name, [the Gatto] is still a damaged, salvageable off-shore drilling platform."

bursements by Burns and API to various individuals were not recoverable because there was no evidence that the funds were actually spent "in connection with" the attempt to salvage the Gatto. However, the Pollard deposition, admitted into evidence without objection by Edinburgh, documents the manner in which the expenditures were made. The district court expressly found that the evidence indicated the sums in question were disbursed in connection with the salvage venture and observed that a description of each separate disbursement was provided by representatives of API and Burns.

Edinburgh also argues that the district court erred in awarding costs and expenses which Burns and API incurred after March 29, 1976, the date they allegedly concluded that the Gatto was an actual total loss. We disagree. There is substantial evidence in the record supporting the district court's conclusion that the expenditures challenged here were made to assist "in ascertaining the extent of damage," and therefore were within the scope of the contractual indemnification provision.

Finally, Edinburgh insists that the district court improperly awarded damages under the "sue and labor" clause of the contract. While the district court did mention the sue and labor clause in its opinion, *see* 479 F.Supp. at 160, it did not, in its memorandum on damages, award sums to API and Burns solely under the sue and labor clause. All of the expenditures awarded were proper under the basic contractual indemnity. "We will affirm a district court's decision if it is correct, regardless whether the district court relied upon a wrong ground or gave a wrong reason." *Huntington Beach Union High School Dist. v. Continental Information Systems Corp.*, 621 F.2d 353, 358 (9th Cir. 1980).

■ Burns and API, on cross-appeal, also raise several issues with respect to the damages awarded. Burns claims that it should have been awarded the interest on loans it secured to finance the Gatto salvage operation. The district court, however, found that the cost of securing venture capital was outside the contemplation of the parties in providing indemnity against expenses incurred "in connection with" the salvage. As this finding was not clearly erroneous we will not disturb it here. Both Burns and API also claim that the court erred in not awarding them the full amount of damages claimed as overhead expenses. We fail to see how it was error for the district court to refuse to award a flat 15% of the direct expenses as overhead expenses where, as here, there was sufficient information available for it to examine each item claimed as an overhead expense and decide whether or not the expense had been incurred "in connection with" the salvage operation.

■ In addition, Burns and API vigorously assert that Edinburgh's conduct amounted to "bad faith" as a matter of law, and therefore that the district court erred in refusing to award damages for bad faith and attorneys' fees. The district court found that Edinburgh had not acted in bad faith, but rather had refused to pay out on the policy due to a good faith, but erroneous interpretation of "actual total loss" under the Act. This finding was not clearly erroneous. *See United States v. United States Gypsum Co., supra.* Although the district court acknowledged Edinburgh's "singlemindedness" in disclaiming liability, *see* 479 F.Supp. at 160, that observation does not, as Burns insists, conflict with a finding of good faith. Rather, it is equally consistent with the conclusion that Edinburgh honestly believed only a total, physical destruction of the Gatto was an insurable event. For this same reason, it was not error for the district court to refuse to award the amount claimed as attorneys' fees. *See Vaughan v. Atkinson*, 369 U.S. 527, 530–31, 82 S.Ct. 997, 999, 8 L.Ed.2d 88 (1962).

■ The district court did err, however, in failing to award prejudgment interest. The district court awarded interest at the rate of 7%, the legal interest rate in California, from the date of judgment. Yet the general rule in admiralty cases is that prejudgment interest will be awarded.

*Dillingham Shipyard v. Associated Insulation Co.,* 649 F.2d 1322, 1328–29 (9th Cir. 1981); *The President Madison,* 91 F.2d 835, 845 (9th Cir. 1937). The determination of whether peculiar circumstances exist warranting the denial of prejudgment interest is left to the sound discretion of the district court. *Dillingham Shipyard v. Associated Insulation Co., supra; Federal Barge Lines, Inc. v. Republic Marine, Inc.,* 616 F.2d 372, 373 (8th Cir. 1980). Here, the district court presented no reasoned grounds for its refusal to award prejudgment interest and its application of the 7% legal rate instead of the 10% rate sought by Burns and API. It is settled, however, that a federal court is not bound by state-prescribed interest rates in setting the rate of prejudgment interest in admiralty cases, *id.; Sea-Land Service, Inc. v. Eagle Terminal Tankers, Inc.,* 443 F.Supp. 532, 534 (W.D.Wash.1977) (*citing The President Madison, supra,* 91 F.2d at 847), and that the rationale for an award of prejudgment interest is to compensate fully the injured party for its losses, *Federal Barge Lines, Inc. v. Republic Marine, Inc., supra,* 616 F.2d at 373. Having failed to articulate any reason why these general principles should not apply in this case, the district court abused its discretion in refusing to award prejudgment interest. On remand, the district court should determine at what rate and from what time prejudgment interest should be awarded.

### III. *The Counterclaims*

Burns and API also challenge the district court's orders (1) granting summary judgment on their counterclaim for punitive damages for bad faith, and (2) striking their counterclaim for fraud in the inducement as a "sham" pleading pursuant to Fed.R.Civ.P. 11. The district court properly deferred consideration of the bad faith claim until after it had determined whether Edinburgh was liable under the indemnity contract. Subsequently, the district court concluded that there was no material question of fact as to whether Edinburgh disputed its obligation to indemnify Burns and API in bad faith. Summary judgment should, of course, rarely be granted on claims that

hinge on questions of motive. Nonetheless, we find no support in the record for the contention that Edinburgh unreasonably refused to investigate the Gatto's condition or to deal with Burns and API. Rather, the record supports the district court's conclusion that the extent of the investigation conducted by Edinburgh was reasonable, and that Edinburgh refused to deal further with API and Burns only because of its erroneous, but good-faith belief that the Gatto had not suffered an "actual total loss" within the meaning of the indemnification provision. This necessarily compels the conclusion that Edinburgh did not, as Burns and API alleged, fraudulently induce Burns and API to enter the indemnity contract when, in fact, it never intended to meet its contractual obligation. Thus, if it was error to strike the counterclaim for fraud in the inducement as a sham pleading, *see Lau Ah Yew v. Dulles,* 236 F.2d 415, 416 (9th Cir. 1956); *Murchison v. Kirby,* 27 F.R.D. 14, 19 (S.D.N.Y.1961), it was harmless error. *Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946); Fed.R.Civ.P. 61.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

FARRIS, Circuit Judge, concurring:

I concur in parts II and III of the opinion but I believe some expansion of the rationale of part I is at least desirable.

Edinburgh challenges the legal criteria applied by the district court in determining whether or not the Gatto was an actual total loss. Two factors control our review. First, the court's factual conclusions can be set aside only if they are clearly erroneous. Fed.R.Civ.P. 52(a); *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Lundgren v. Freeman,* 307 F.2d 104, 113 (9th Cir. 1962). The district court made extensive findings of fact regarding the physical condition of the Gatto. After reviewing evidence on the Gatto's condition, including an underwater video tape survey of the damage to the rig, the court concluded that:

After the Gatto suffered the January 1976 casualty, it was without significant value. It was no longer an off-shore drilling platform. It was a dispersed mass of scrap, a wreck. The Gatto had broken up. The Gatto as such was destroyed. *Edinburgh Assurance Co. v. R. L. Burns Corp.*, 479 F.Supp. 138, 149 (C.D.Cal.1979).[1] In arriving at this conclusion the court considered the Gatto's commercial value as well as physical being. There is substantial evidence in the record to support these conclusions. They are therefore not clearly erroneous.

Second, we must consider the legal criterion applied by the court in concluding that the Gatto was an actual total loss. Conclusions of law may be overturned if they are in error. Edinburgh argued initially that a thing is an actual total loss only when it is not within the scope of present technology to recover and repair it, no matter what the cost. The insured, on the other hand, argued that a thing is an actual total loss when as a practical business matter repair would not be prudent. The district court wisely rejected both positions.

As English law was to be applied in defining actual total loss, the district court properly looked to the British Marine Insurance Act of 1906. Section 57(1) of the Act provides:

> Where the subject matter insured is [1] destroyed, or [2] so damaged as to cease to be a thing of the kind insured, or [3] where the assured is irretrievably deprived thereof, there is an actual total loss.[2]

The district court held that only one of the three tests must be satisfied and any of the three parts of the definition may be applied to a vessel like the Gatto. *Id.* at 155; (citing *George Cohen, Sons & Co. v. Standard Marine Insurance Co.*, 21 Lloyds List L.R. 30 (K.B.1925) and *Kemp v. Halliday*, 122 Eng.Rep. 1361, 1363 (Q.B.1866)).

Carefully applying the test to the undisputed facts, the court concluded that the Gatto was not an actual total loss under the third test—whether the subject insured was irretrievably lost—because it was technologically possible to salvage and repair it. The court concluded however, that the salvageability and repair criteria are only applicable to the third test and have no applicability to the first two tests.

It next applied the first two tests, whether the thing insured is "destroyed" or is "so damaged as to cease to be a thing of the kind insured." In interpreting the first two tests, the court recognized that actual total loss embodied both physical and value oriented concepts. 479 F.Supp. at 156. The court pointed out that to place undue emphasis on either concept would yield inequitable results and would blur the distinction between actual total loss and constructive total loss. Support for the consideration of both physical and value oriented concepts is found in English case law which recognizes that the subject matter of insurance may cease to be a thing of the kind insured, or be destroyed, and hence be an actual total loss even though there still exists significant, accessible physical remains.[3] I agree.

The district court finally utilized three standards in determining when the subject-matter is "destroyed" or is "so damaged as to cease to be a thing of the kind insured."[4]

---

1. The trial court also stated in its findings of fact that the Gatto was an actual total loss. 479 F.Supp. at 149. I interpret the court to be referring to actual total loss in its non-legal sense since the opinion subsequently goes to great length to determine its meaning under English law.

2. 479 F.Supp. at 154.

3. 479 F.Supp. at 156. *See Sailing Ship Blairmore Co. v. Macredie*, (1898) A.C. 593 at 603 (House of Lords); *Levy & Co. v. The Merchants Marine Insurance Co.*, 5 Asp.M.L. 407 at 409 (Q.B.1885); *St. Margaret's Trust v. Navigator's & General Insurance Co., Ltd.*, 82 Lloyd's List L.R. 752 (K.B.1949); *George Cohen, Sons & Co. v. Standard Marine Insurance Co.*, 21 Lloyd's List L.R. 30 (K.B.1925).

4. The three standards developed by the district court were:

> [F]irst is the standard of reasonable salvage and/or engineering effort. . . .

Based on the district court's findings of fact, the Gatto is an actual total loss under the first and second tests of the British Marine Insurance Act. Therefore, we need not decide the merits of the court's three standards. I join my colleagues in affirming.

A second standard is whether the refurbishing effort is so extensive as not reasonably to be characterized as repair. . . .

A third standard is whether the cost of recovering and refurbishing the thing insured is so out of proportion to the value of the resulting operational entity that the thing must reasonably be considered an actual total loss.

479 F.Supp. at 158.