Brady, J.
Plaintiffs bring this action to reach and apply the proceeds of an insurance policy issued by defendant Underwriters at Lloyd’s (the Underwriters). Plaintiffs also maintain that the Society of Lloyd’s (the Society) is also liable to satisfy the final judgment against the Underwriters’ insureds, and, finally, have asserted claims against the Underwriters, the Society and Frank Gair Macomber Claims Agency, Inc. (Macomber) for claims handling practices in violation of G.L.c. 93A. The Society now seeks to dismiss the complaint on the grounds that: this court lacks personal jurisdiction over it, service of process was defective, and venue is improper in this court because the insurance policy itself contains a forum selection clause that vests exclusive jurisdiction over the action in the courts of London, England. The Underwriters and Macomber also move for dismissal on the ground that venue is improper because of the forum selection clause, and the Underwriters seek to dismiss the complaint for failure to state a claim under English law. After consideration of the oral arguments and submissions by the parties, for the following reasons, the motions to dismiss are ALLOWED.
BACKGROUND
I. General background.
This case has its origins in the sinking of British registered sailing vessel, the S/V Marques, on June 3, 1984, during the Cutty Sark International Tall Ships Race from Bermuda to Halifax, Nova Scotia. Plaintiffs’ decedents were sail trainees on board when the vessel sank, and were among the nineteen who died in the sinking. Plaintiff Edward J. McAleer is, and the decedent James F. McAleer was, a Massachusetts resident. Plaintiffs Hardy LeBel and Joan LeBel are Rhode Island residents, as was decedent Thomas A. LeBel.
In 1987, plaintiffs filed an action in the U.S. District Court for the District of Massachusetts against the Society, and the owners and the estate of the captain of the S/V Marques, among others. The Court (Skinner, J.) determined that for the purpose of the claims alleged[4] against the Society, the plaintiffs had submitted sufficient facts to confer personal jurisdiction upon the Society in Massachusetts. McAleer v. Smith, No. 87-0772-S (D.Mass. Mar. 1988), slip op. at 18. The Court thereafter transferred the case to the U.S. District Court for the District of Rhode Island, because the Massachusetts Court lacked personal jurisdiction over certain other defendants, including the owners of the vessel, Mark Shirley Portal Litchfield (Litchfield) and Robin Patrick Cecil-Wright (Cecil-Wright), both English residents and citizens domiciled in England. The claims against the Society were dismissed by the Rhode Island District Court (Lagueux, J.) on the Society’s motion for summary judgment. McAleer v. Smith, 791 F.Supp. 923, 932-935 (D.R.I. 1992). After a bench trial in 1993, the Court (Lagueux, J.) entered judgment in favor of all defendants except Litchfield and Cecil-Wright. Default judgments totaling over $725,000. were entered against Litchfield and Cecil-Wright.
II. The defendants.
According to the uncontroverted affidavit of Richard Byrnell Leathes Prior, the Society is a non-profit entity, funded by its members, and is a self-regulated insurance market, in which groups of insurance underwriters band together in syndicates and compete with one another for the right to insure a given risk in the Lloyd’s market.[5] The Society provides a building and incidental support services for the sale of insurance by underwriters. The Corporation of Lloyd’s (the Corporation) is the administrative arm of the Society, and owns the trademark called “Lloyd’s of London.”
Prior also avers that an insurance risk may be placed in the Lloyd’s market only through certain *374 approved insurance brokers, known as “Lloyd’s brokers,” who take the risk around the Lloyd’s market, from syndicate to syndicate, until the risk is fully subscribed. The Society does not underwrite risks, issue insurance policies, receive or collect insurance premiums, or pay insurance claims in its own name or on its own behalf. It does not procure insurance business for any underwriter or underwriting syndicate, and does not make or negotiate insurance contracts. The Society cannot require any individual underwriter to underwrite a particular risk. Each underwriter at Lloyd’s is individually liable for his share of the losses in their syndicate; liability is several but not joint. None of the underwriters is a principal, agent or partner of the Society or the Corporation. The Society has been described as “resembl[ing] the New York Stock exchange, which houses and regulates its member stockbrokers but takes no part in the trading of securities.” McAleer v. Smith, supra, 791 F.Supp. at 932.
According to the affidavit of Edward W. Romans, Jr., Macomber is an independent company based in Braintree, Massachusetts, that is appointed as a “Lloyd’s Agent.” As a Lloyd’s Agent, Macomber is appointed for the sole purpose of surveying or adjusting cargo claims.[6] Macomber is not a party to the insurance policy that the plaintiffs seek to reach and apply, does not adjust any other claims for the Underwriters, and has never investigated or acted on behalf of the other defendants in this action with respect to any of the plaintiffs claims.
III. The Policy.
Finally, according to the uncontroverted affidavit of David Johnston, the insurance policy at issue (the Policy) is a yacht hull policy that incorporates limited liability coverage against liabilities to third parties. The Underwriters are Syndicate 691 at Lloyd’s of London (the Yachtsmen Syndicate) and the coverage was negotiated, accepted, issued and paid through the offices of Ocean Brokers Limited, English insurance brokers, and through Dashwood Brewer and Phipps Limited, English insurance brokers who are approved Lloyd’s brokers. The Policy contains a forum selection clause that reads: “It is agreed that in the event of a dispute between Underwriters and the Policy Holder jurisdiction of the English Courts in London will determine and resolve said dispute. Service of suit will be accepted by Ingledew, Brown, Bennison and Garrett, International House, 26 Creechurch Lane, London EC3A 7AL, England.” See Policy at 2.
DISCUSSION
Each of the defendants seeks dismissal of the action on the ground that the forum selection clause contained in the Policy vests exclusive jurisdiction over the action in the courts of London, England.
In the absence of any substantial public policy to the contrary, Massachusetts will enforce a forum selection clause between the parties to a contract according to the laws of the state by which the agreement is to be construed. Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 575 (1995). Because judgment creditors’ rights are derivative from those of the insureds, Polito v. Galluzzo, 337 Mass. 360, 363 (1958); Morse v. The Employers’ Liability Assurance Corp., Ltd., 3 Mass.App.Ct. 712, 712 (1975), the court concludes that this applies to enforcement of the forum selection clause against judgment creditors, as well. The court must therefore determine whether the law of Massachusetts or England will apply to the plaintiffs’ substantive claims.
I. Choice of law.
The defendants maintain that, given the nature of the transaction and the forum chosen by the parties to the Policy, the parties also intended that English law would apply. In making the choice-of-law determination, Massachusetts courts use the functional approach, “ ‘by assessing various choice-influencing considerations’ including those provided in the Restatement (Second) of Conflict of Laws (1971).” Cosme v. Whitin Machine Works, Inc., 417 Mass. 643, 646 (1994), quoting Bushkin Associates, Inc. v. Raytheon Co., 393 Mass. 622, 631 (1985). The Restatement provides that even in the absence of an express choice-of-law provision the court may nevertheless conclude that the parties did wish to have the law of a particular forum applied. Restatement (Second) of Conflict of Laws §187 comment a (1971). Under the circumstances presented here, involving a policy negotiated, accepted, issued and paid in England that designated London, England as the chosen forum; made between an English insurer and the English owners of an English vessel; and covering a voyage in Continental Waters in the Atlantic, the defendants present a compelling argument.
Furthermore, the court concludes that an evaluation of the choice-of-law principles contained in §§186 and 187 of the Restatement yields the same result. These sections provide that, in the absence of a choice of law by the parties, their rights “are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in §6.” Restatement at §188(1). “(T]he contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place ofbusiness of the parties.” Restatement at §188(2). These factors all point to the application of English law. As noted above, the Policy was negotiated, accepted, issued and paid in England; designated London, England as the chosen forum; and was made between an English insurer and the English owners of an English vessel to cover a voyage in the Continental *375 Waters in the Atlantic, including those off the eastern seaboard of the United States. Further, the underlying case against the insureds involved the sinking of the S/V Marques off the coast of Bermuda, before it neared Massachusetts waters.
- In addition to these factors, the court must also look to the choice-influencing factors listed in §6 of the Restatement, which provides that “the factors relevant to the choice of the applicable rule of law include: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (i) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.” Id. at §6(2). These factors, too, point to the application of English law.
As to the relevant policies and needs of the international systems, both the United States and England have an interest in ensuring that judgments sought to be enforced against their citizens were rendered only after a fair trial in a contested proceeding. See Restatement at §9, comment d; id. at §98, comments a and d; Civil Jurisdiction and Judgments Act, 1982, ch. 33 (U.K.). Next, the Policy was issued in an insurance market that is regulated under special statutes passed by Parliament; Massachusetts must have regard for the needs of England to oversee that system, and must recognize that England’s interests are deeply affected. See id. at §6, comments e and f. Further, Massachusetts should protect the justified expectations of the parties to the Policy, that disputes relating to it would be heard in England, according to rules of law that are predictable to the parties. See id. at comment g. Massachusetts has no interest, apart from being the place where the action was filed, in the claims filed by the administrators of the estate of Thomas LeBel. Id. at comment e. Massachusetts’ only other interest is that James McAleer was, and his administrator is, a Massachusetts resident; though the court must note that James McAleer knew that the voyage that he was embarking upon was on a British sailing vessel.
Finally, the court does not consider determinative that Massachusetts statutory law (unlike English law) prohibits forum selection and choice-of-law clauses in insurance policies covering lives, property or interests in the commonwealth, see G.L.c. 175, §§3 and 22, and prohibits any requirement that payment by the insured be a condition precedent to payment by the insurer, see id. at §§112 and 113. Compare Lundblad v. New Amsterdam Casualty Co., 265 Mass. 158, 162 (1928) (recognizing Rhode Island statute creating substantive right to subrogation to the rights of the insured, where statute was not contrary to the public policy of the commonwealth or in conflict with G.L.c. 175, §§112 and 113). Massachusetts insurance laws are not intended to regulate insurance contracts made in other jurisdictions. Stone v. Old Colony Street Ry. Co., 212 Mass. 459, 464 (1912). Plaintiffs are not aided by Saunders v. Austin W. Fishing Corp., 352 Mass. 169 (1967), because that case considered the applicability of c. 175, §112 to a certain type of policy that was made in Massachusetts.
Based on the consideration of the §6 factors, the court concludes that England has the most significant relationship to the transaction and the parties. The court therefore rules that the substantive laws of England will apply.
II. The forum selection clause.
The court notes that the materials submitted by the Underwriters suggest that the attitude of the courts of England to the enforcement of forum selection clauses is similar to that of Massachusetts, “that forum selection clauses are to be enforced if it is fair and reasonable to do so,” Jacobson v. Mailboxes Etc. U.S.A., Inc., supra at 574-75, referring to the Restatement (Second) of Conflict of Laws, §80 (1988 revision). See 1 Dicey and Morrison the Conflict of Laws (11th ed. 1987) at 402-03 (considering the Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters (Brussels, 1968) and citing cases following the rule that where a contract provides that all disputes between the parties are to be referred to the exclusive jurisdiction of a foreign tribunal, the court will enforce the provision unless the plaintiff proves that it is just and proper to allow then to continue in the English courts).
The materials submitted by the Underwriters also suggest that, in the case of third party claimants, the courts of England will enforce a forum selection clause. See Farrell v. Federated Employers’ Insurance Assoc., [1970] 2 Lloyd’s Rep. 170, 172 (Eng. C.A.) (injured person stands in the shoes of the insured); Partenreederei ms. Tilly Russ v. Haven & Vervoebedrijf Nova N.V. [1985] 1 Q.B. 931, 954 (E.C.J.). As noted above, Massachusetts has no interest, apart from being the place where the action was filed, in the claims filed by the administrators of the estate of Thomas LeBel, and those claims will be dismissed. As to the McAleer claims, absent some substantial public policy to the contrary, Jacobson v. Mailboxes Etc. U.S.A., Inc., supra at 575, this court should dismiss those claims,[7] as well. The parties agree that English law is contrary to Massachusetts statutory law prohibiting any requirement that payment by the insured be a condition precedent to payment by the Insurer. The Massachusetts statute may promote an important purpose, see, e.g., Filippone v. Mayor of Newton, 16 Mass.App.Ct. 417, 425 (1983); the court is not convinced, however, that it rises to the level of a “substantial public policy.” For this reason, this court will enforce the forum selection clause and dismiss the McAleer claims, as well.
*376 ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ motions to dismiss are ALLOWED, and the complaint is dismissed.

The Court characterized “the essence of the complaint [as being! that Lloyd’s lent its name to the other defendants for promotion of sail training voyages, and that by doing so, Lloyd’s created the implication that the vessel was seaworthy.” McAleer v. Smith, No. 87-0772-S (D.Mass. Mar. 1988), slip op. at 18.

By special statutes passed by Parliament, known as “Lloyd’s Acts, 1871-1982,” the market is referred to as the “Society of Lloyd’s.” All other British insurers are required by law to be incorporated and are regulated by the Department of Trade and Industry, but the Society of Lloyd’s has retained its unique market structure and self-regulating powers under the Lloyd’s Acts.
For an overview of the operation of the Lloyd’s insurance market, see Edinburgh Assur. Co. v. R.L. Burns Corp., 479 F.Supp. 138, 144-46 (C.D.Cal. 1979), aff'd, 669 F.2d 1259 (9th Cir. 1982).

The Society maintains that Macomber is not an agent for the Society (or, therefore, for the Corporation), but acts as a surveyor/adjuster of cargo claims for underwriters in the Lloyd’s market. Plaintiffs, on the other hand, have submitted an excerpt from the 1987 Lloyd’s Nautical Year Book, which indicates that “today Lloyd’s Agents remain Agents of the Corporation of Lloyd’s and not of individual Underwriters . . . [s]ince 1811 they have not had any authority to act on behalf of individual Underwriters . . .”

Unlike the claims in Jacobson v. Mailboxes Etc. U.S.A., Inc., supra at 579, that were based on pre-contract violations of 93A, the violations alleged here arise from practices in handling claims under the Policy. Since the principal focus of the claims is on the Policy, then the court must decline to entertain any part of the action in Massachusetts. Id. at 579-80.