[No. 37431-5-II.   Division Two.   August 25, 2009.]

Scott Walter Maziar, *Appellant*, v. The Department of Corrections, *Respondent*.

*Karl E. Dickman* (of *E. Dickman Law Firm*), for appellant.

*Robert M. McKenna, Attorney General*, and *John C. Dittman, Assistant*, for respondent.

¶1 ARMSTRONG, J. — Scott Walter Maziar brought federal maritime tort claims against his employer, the Department of Corrections (DOC), for personal injuries sustained during his commute from McNeil Island on a DOC-run ferry.

He now appeals the trial court's summary judgment dismissal of his claims, arguing in part that the Industrial Insurance Act (IIA), Title 51 RCW, does not preclude his federal maritime claim because it expressly excludes from IIA coverage a plaintiff "for whom a right . . . exists under the maritime laws." RCW 51.12.100(1). In the alternative, Maziar contends that the State cannot bar his federal maritime claim because federal maritime law controls over any state workers' compensation laws. Finally, Maziar disputes DOC's argument that his claims are barred by the State's sovereign immunity. We agree with Maziar that the IIA cannot bar his federal maritime claims. We also agree that the State has waived its sovereign immunity for claims like Maziar's. Accordingly, we reverse and remand for trial.

## FACTS

¶2 Maziar was a DOC employee who worked on McNeil Island. Part of his commute was on a ferry DOC operated. One day, Maziar was riding the ferry home after a work shift and was resting with his feet on a chair. The ferry captain kicked the chair out from under Maziar's feet, causing Maziar to fall to the deck and injure himself.

¶3 Maziar applied for and received workers' compensation benefits from the Department of Labor and Industries for permanent injuries that allegedly prevent him from working. He then filed this action against DOC for negligence under the "general maritime law." Clerk's Papers at 4.

¶4 DOC moved for summary judgment, arguing that (1) Maziar's tort claim was barred by the IIA's exclusive remedy and (2) the State had not waived its sovereign immunity for maritime claims where the plaintiff was a passenger. Maziar responded that (1) the State had waived its sovereign immunity in RCW 4.92.090; (2) the IIA did not apply because of several statutory exclusions; and (3) even if IIA did apply, it could not exclude recovery under federal maritime laws.

¶5 The trial court granted DOC's motion.

## ANALYSIS

### I. MARITIME VS. STATE REMEDIES

¶6 Maziar argues that the trial court erred in granting summary judgment to DOC because the IIA specifically excludes maritime claims from its coverage and, thus, the IIA's bar on personal injury actions against an employer does not apply. In the alternative, Maziar argues that even if the IIA covers his injuries, state workers' compensation laws cannot bar recovery under federal maritime law. The DOC counters that Maziar is covered by the IIA and, although Maziar's action may be a maritime matter, it is of "purely local concern," which the IIA controls. Br. of Resp't at 16.

¶7 A trial court properly grants a motion for summary judgment when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. CR 56(c). We review an order on summary judgment de novo. *See Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). Because we hold that Maziar's federal maritime claim against DOC survives even if he is also covered under the IIA, we need not decide whether the legislature intended to exclude him from IIA coverage.

¶8 Washington's IIA, like other workers' compensation schemes, is the product of a compromise between employers and workers. *Cowlitz Stud Co. v. Clevenger*, 157 Wn.2d 569, 572, 141 P.3d 1 (2006). In it, the legislature abolished all common law civil actions for personal injuries that occur during a worker's employment and, in exchange, employers accept limited liability for claims that might not have been compensable under the common law. *Cowlitz Stud Co.*, 157 Wn.2d at 572; *see* RCW 51.04.010. DOC argues that Maziar was an IIA-covered employee at the time of his injury and, thus, he has no claim for on-the-job injuries against DOC, his employer.

■ ¶9 Under the United States Constitution, however, federal power extends to "all cases of admiralty and maritime jurisdiction." U.S. Const. art. III, § 2. This provision grants the federal government not only jurisdiction over maritime disputes,[1] but also the authority to maintain and develop the substantive law to be applied.[2] 1 Thomas J. Schoenbaum, Admiralty and Maritime Law 74-75 (4th ed. 2004) (citing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 360-61, 79 S. Ct. 468, 3 L. Ed. 2d 368 (1959)).

■ ■ ¶10 Here, Maziar's claim falls within maritime jurisdiction. A party seeking to invoke admiralty tort jurisdiction must show that the incident in question (1) occurred on navigable waters, (2) bears a substantial relationship to traditional maritime activity, and (3) has a potentially disruptive impact on maritime commerce. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531-34, 115 S. Ct. 1043, 130 L. Ed. 2d 1024 (1995); 1 Schoenbaum, *supra*, at 98. This jurisdiction extends to passengers on vessels in navigable waters. 2 Am. Jur. 2d *Admiralty* § 71, at 586 (2004) (citing *Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125 (3d Cir. 2002); *Elder Dempster Shipping Co. v. Pouppirt*, 125 F. 732 (4th Cir. 1903)); *e.g.*, *Spencer Kellogg & Sons, Inc. v. Hicks*, 285 U.S. 502, 513, 52 S. Ct. 450, 76 L. Ed. 903 (1932) (*The Linseed King*); *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 840-41 (9th Cir. 2002). And Maziar does not have to show that he paid for his passage on DOC's ferry to invoke admiralty jurisdiction. *See The Linseed King*, 285 U.S. at 512; *see also Kermarec v. Compagnie Generale Transatlantique*, 358 U.S.

---

[1] The "saving to suitors" clause in 28 U.S.C. § 1333(1) allows plaintiffs to seek maritime remedies in state courts, which is what occurred in this case. *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 445, 121 S. Ct. 993, 148 L. Ed. 2d 931 (2001).

[2] Some maritime law has been created by Congress, *see generally* Titles 33, 46 U.S.C., but Maziar's claims fall under the "general maritime law," which is an ancient set of judge-made laws that the federal courts have adopted and developed. 1 Thomas J. Schoenbaum, Admiralty and Maritime Law 158 (4th ed. 2004); *see Exxon Shipping Co. v. Baker*, 554 U.S. ___, 128 S. Ct. 2605, 2619, 171 L. Ed. 2d 570 (2008) (quoting *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 259, 99 S. Ct. 2753, 61 L. Ed. 2d 521 (1979)).

625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959) (injuries to guest of crew member on vessel); *Leathers v. Blessing*, 105 U.S. 626, 629-30, 26 L. Ed. 1192 (1881) (injuries to one who boarded vessel at wharf to determine whether expected consignment of cotton seed had arrived).

¶11 But maritime jurisdiction does not necessarily exclude state law. *Yamaha Motor Corp., USA v. Calhoun*, 516 U.S. 199, 206, 116 S. Ct. 619, 133 L. Ed. 2d 578 (1996); Robert Force, *Choice of Law in Admiralty Cases: "National Interests" & the Admiralty Clause*, 75 TUL. L. REV. 1421, 1423 (2001). And DOC argues that although Maziar's claim may be maritime in nature, it is of local concern only and, thus, falls within an exception ("maritime but local") to the rule that federal maritime law provides the exclusive remedy for maritime claims. We disagree and begin our discussion with the background for the legal development in this area.

¶12 In *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 208-09, 37 S. Ct. 524, 61 L. Ed. 1086 (1917), a longshoreman was killed while unloading cargo from his employer's ship, and his widow and children sought and received death benefits from his employer under New York's workers' compensation act. The Supreme Court held that New York's workers' compensation law was unconstitutional to the extent it conflicted with federal maritime law, reasoning that Jensen was engaged in maritime work when he died; the constitution and the Judiciary Act of 1789 vested exclusive jurisdiction of civil maritime claims with federal courts except common law remedies " 'where the common law is competent to give it' "; and the New York workers' compensation laws were "of a character wholly unknown to the common law." *Jensen*, 244 U.S. at 218 (quoting Judiciary Act of 1789, 1 Stat. 76, 77 (1789)).

¶13 In *Grant Smith-Porter Ship Co. v. Rohde*, 257 U.S. 469, 42 S. Ct. 157, 66 L. Ed. 321 (1922), the Court again considered where to draw the boundary between state workers' compensation laws and federal maritime law. Rohde was a carpenter working on finishing a new ship that

was lying in navigable waters when he was injured. *Grant Smith-Porter Ship Co.*, 257 U.S. at 473-74. He sued his employer in federal court on his maritime claim. *Grant Smith-Porter Ship Co.*, 257 U.S. at 474. The employer argued that Oregon's workers' compensation program, into which it had paid premiums and in which Rohde had agreed to participate, provided the exclusive remedy. The Supreme Court agreed, reasoning that the contract between employer and employee concerned nonmaritime matters, and applying the workers' compensation laws would not "materially affect any rules of the sea." *Grant Smith-Porter Ship Co.*, 257 U.S. at 477.

¶14  Again, in *Millers' Indemnity Underwriters v. Braud*, 270 U.S. 59, 62-63, 46 S. Ct. 194, 70 L. Ed. 470 (1926), the Court held that Texas's workers' compensation act applied to claims arising from a diver who was working underwater, sawing timbers from an abandoned ship in navigable waters. The employer had paid insurance premiums for its employees to participate in the Texas workers' compensation program, which barred any action by an employee outside the program. *Braud*, 270 U.S. at 63. The Court, citing *Grant Smith-Porter Ship Co.*, held that the matter was of "mere local concern and its regulation by the state will work no material prejudice to any characteristic feature of the general maritime law." *Braud*, 270 U.S. at 64-65.

¶15  But in 1932, the Court held that the federal district court erred in ruling that certain workers' admiralty claims were covered by state workers' compensation laws. *The Linseed King*, 285 U.S. at 514. In *The Linseed King*, the employer was transporting workers and prospective workers from New York City to its plant in New Jersey by ferry when the employer's boat hit ice and sank. *The Linseed King*, 285 U.S. at 507. The Court reasoned that transporting the workers across navigable waters to facilitate the employer's business was a maritime matter. *The Linseed King*, 285 U.S. at 512-13. And because the employer negligently caused the injuries by attempting the trip during icy conditions, the action was a maritime tort. *The Linseed King*, 285 U.S. at 513.

¶16 The Fifth and Third Circuits have since concluded that an exclusive remedy provision of state workers' compensation laws cannot bar federal claims under the general maritime law. *Purnell v Norned Shipping BV*, 801 F.2d 152, 156 (3d Cir. 1986); *King v. Universal Elec. Constr.*, 799 F.2d 1073, 1074 (5th Cir. 1986); *Thibodaux v. Atl. Richfield Co.*, 580 F.2d 841, 847 (5th Cir. 1978). In *Thibodaux*, as in *The Linseed King*, the employer was transporting workers to the jobsite when one of them drowned after the transport barge sank. *Thibodaux*, 580 F.2d at 842. Atlantic Richfield, the employer, argued that Louisiana's workers' compensation law protected it from any claim outside the act. *Thibodaux*, 580 F.2d at 846. Although the court recognized that "there is room for state action in the regulation of maritime commerce," it concluded that "an exclusive remedy provision in a state workmen's compensation law cannot be applied when it will conflict with maritime policy and undermine substantive rights afforded by federal maritime law." *Thibodaux*, 580 F.2d at 847. *Thibodaux* did not cite *The Linseed King* but instead relied on *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 409, 90 S. Ct. 1772, 26 L. Ed. 2d 339 (1970), where the Supreme Court held that federal maritime law afforded a wrongful death remedy for a death caused by a violation of maritime duties. *Thibodaux*, 580 F.2d at 846. The court also found support for its reasoning in *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409-10, 74 S. Ct. 202, 98 L. Ed. 143 (1953), where the Court applied the more liberal federal maritime contributory negligence doctrine over the state's contributory negligence rule. *Thibodaux*, 580 F.2d at 846.

¶17 Finally, the Ninth Circuit addressed the issue in *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1402-03 (9th Cir. 1994). Chan worked for Society Expeditions, a company that marketed and chartered cruise ships from its Seattle office. *Chan*, 39 F.3d at 1401-02. He booked passage for himself aboard a ship chartered by Society Expeditions and was subsequently injured during the cruise when an inflatable raft overturned while ferrying him to an atoll.

*Chan*, 39 F.3d at 1401-02. Chan sued his employer, alleging general maritime claims for negligence and unseaworthiness. *Chan*, 39 F.3d at 1402. The district court dismissed the claims in part, ruling that Washington's workers' compensation law barred Chan's claims against his employer. *Chan*, 39 F.3d at 1402. On appeal, the court reversed, holding that Chan, whether or not he was covered by the IIA, "still has a general claim in admiralty for negligence, and adjudication of that claim is governed by federal common law." *Chan*, 39 F.3d at 1403 (footnote omitted).

¶18 DOC relies on *Garrisey v. Westshore Marina Associates*, 2 Wn. App. 718, 469 P.2d 590 (1970). In that case, Garrisey was hired to assist carpenters in constructing a marina, and he sustained injuries when a raft they were using to move building material started to sink. *Garrisey*, 2 Wn. App. at 719. Garrisey sued his employers, alleging a general maritime claim of unseaworthiness. *Garrisey*, 2 Wn. App. at 720. The issue was whether Washington's IIA precluded the federal maritime claim. *Garrisey*, 2 Wn. App. at 720. The court reviewed the federal case law in place at the time, breaking possible outcomes into four categories: (1) exclusive maritime jurisdiction; (2) exclusive state jurisdiction; (3) maritime but "local concern" cases that require state workers' compensation application; and (4) " 'twilight zone' " cases in which the worker is bound by his election of a remedy. *Garrisey*, 2 Wn. App. at 722-23. It then concluded that the case, although maritime, was of local concern only. *See Garrisey*, 2 Wn. App. at 726.

¶19 The federal courts developed the "maritime but local" doctrine in response to *Jensen*, 244 U.S. 205. In addition, in 1927, Congress passed the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-950, to provide workers' compensation coverage for maritime workers ineligible for state coverage under *Jensen*. *Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Perini N. River Assocs.*, 459 U.S. 297, 306, 103 S. Ct. 634, 74 L. Ed. 2d 465 (1983). The LHWCA conditioned

federal coverage on the absence of any state workers' compensation coverage for the injured worker. *Perini*, 459 U.S. at 307 (quoting LHWCA, 44 Stat. 1426, § 3(a) (1927)). Although Congress had intended the LHWCA in conjunction with state workers' compensation programs to cover all qualified workers, the actual jurisdiction of many claims was difficult to determine because courts excluded " 'maritime but local' " cases from LHWCA coverage and employees therefore had to make a "perilous jurisdictional 'guess' " regarding where to file their claims. *Perini*, 459 U.S. at 307. To address such problems, the courts added even more complexity by creating a new category of "twilight zone" cases to allow state compensation plans to fill any void between LHWCA coverage and state coverage. *See Davis v. Dep't of Labor & Indus.*, 317 U.S. 249, 256, 63 S. Ct. 225, 87 L. Ed. 246 (1942) (employees were bound by the remedy they elected if case fell within "twilight zone"). In 1972, Congress amended the LHWCA to eliminate the " 'jurisdictional dilemma' " altogether. *Calbeck v. Travelers Ins. Co.*, 370 U.S. 114, 137, 82 S. Ct. 1196, 8 L. Ed. 2d 368 (1962) (quoting *Davis*, 317 U.S. at 255). Yet, *Garrisey* was decided in 1970, before Congress' amendments; therefore, its analysis of four categories of possible workers' claims may no longer be necessary.

¶20  But even if we apply the maritime but local doctrine as the DOC contends, *Garrisey* is distinguishable on the facts. *Garrisey* found the necessary "local" connection because the "activity was analogous to that of a laborer or carpenter who moves timber from a stockpile on land to a nearby construction site on land where the timber is to be incorporated into the [marine] structure." *Garrisey*, 2 Wn. App. at 726. Moreover, the movement of timber was not considered as "an end in itself or as 'transportation.' " *Garrisey*, 2 Wn. App. at 726. Thus, it "was not an activity in direct aid of commerce and navigation as, for example, in the case of the transportation of cargo." *Garrisey*, 2 Wn. App. at 726. Here, Maziar was on the ferry for the sole purpose of being transported from work. This fits directly

within the pure maritime activities described in *The Linseed King* and *Thibodaux*. We therefore conclude that Washington's IIA does not bar Maziar's federal maritime claims against the DOC.

## II. SOVEREIGN IMMUNITY

¶21 DOC argues, nonetheless, that Maziar's maritime claim is barred by the State's sovereign immunity. Maziar argues that the State waived its sovereign immunity as to his claim in RCW 4.92.090. We agree with Maziar that the State has waived its sovereign immunity for claims like Maziar's.

¶22 RCW 4.92.090 provides that "[t]he state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." This statute makes the State presumptively liable for its tortious conduct in all instances for which the legislature has not stated otherwise. *Savage v. State*, 127 Wn.2d 434, 445, 899 P.2d 1270 (1995). The statute does *not* limit the State's liability to a particular area of law; rather, it covers any remedy for the State's tortious *conduct*.

¶23 The State argues, however, that RCW 47.60.200 demonstrates that the legislature intended the State's waiver of sovereign immunity for maritime claims to be limited to that chapter. But the statutory language of RCW 47.60.200 belies this interpretation; it states, "Any consent to liability given *under the provisions of this chapter* creates liability of the department only and does not create any general liability of the state." (Emphasis added.) The State's consent to liability under chapter 47.60 RCW extends to claims "resulting from the operation of any ferry or terminal by the [D]epartment" of Transportation, not DOC. RCW 47.60.230. And RCW 47.60.200 does not say or suggest that it precludes any other waiver of sovereign immunity of the State in other settings. Therefore, the

waiver in RCW 4.92.090 remains in effect as to maritime tort claims against DOC. And because a private person or corporation would have been subject to liability under the general maritime law had it operated the ferry involved in this case and engaged in the same allegedly tortious conduct, *e.g.*, *The Linseed King*, 285 U.S. at 512-13, the State is subject to such liability as well. RCW 4.92.090.

¶24 We reverse and remand for trial.

BRIDGEWATER and HUNT, JJ., concur.