# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SCOTT WALTER MAZIAR,

    Respondent/Cross-
    Appellant,

    v.

WASHINGTON STATE
DEPARTMENT OF CORRECTIONS
and the STATE OF WASHINGTON,

    Appellant/Cross-
    Respondent.

DIVISION ONE

No. 71068-1-I

PUBLISHED OPINION

FILED: March 24, 2014

2014 MAR 24 AM 10:44
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

DWYER, J. — Generally, when a plaintiff brings a maritime claim in state court pursuant to the "saving to suitors" clause,[1] article I, section 21 of the Washington Constitution[2] establishes the parties' rights to a jury trial. That constitutional provision, however, does not grant such a right to the State of Washington, the party against whom the claim at issue in this case was asserted.

Plaintiff Scott Maziar initially requested a jury trial. He later moved to strike his jury request, contending that the jury trial right was inapplicable to his cause of action. The State opposed this motion, arguing that Maziar was wrong

---

[1] "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

[2] "The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of the jury in civil cases where the consent of the parties interested is given thereto."

regarding the application of a state law jury right to his maritime cause of action. The State further alleged that it possessed the right to a jury trial in this matter, premising its assertion on article I, section 21 and RCW 4.40.060 and 4.44.090.[3] Although the State was correct that article I, section 21 applied to Maziar's cause of action, conferring upon him such a right, it was incorrect in contending that either the state constitution or the cited statutes confer upon it such a right. Because the State did not cite to the trial court applicable authority establishing its right to a jury trial in this matter, the trial court did not err by striking the jury upon Maziar's request.

With regard to further issues raised herein, we hold that the trial court did not err either by declining to award Maziar prejudgment interest on his damages recovery or by finding that Maziar failed to mitigate his damages. Accordingly, we affirm the judgment.

I

Maziar was employed by the State Department of Corrections (DOC) as a correctional officer at the McNeil Island Corrections Center. On January 16, 2003, at approximately 10:40 p.m., after having finished his shift, Maziar boarded the DOC ferry from McNeil Island to Steilacoom. Maziar sat down on a bench, put his feet up on a loose chair, and closed his eyes. Thereafter, the captain of the ferry pulled the chair out from under Maziar's feet, causing Maziar to fall off the bench. Maziar sustained injuries to his back, left ankle, knee, and left shoulder.

---

[3] These statutes are set forth and discussed in section II, subsection D, infra.

Maziar was unable to return to work as a correctional officer. From March 2003 through August 2003, Maziar worked in DOC's records division. In November 2003, the State offered Maziar a position in the mailroom at McNeil Island. Maziar's physician, Dr. Stephen Settle, did not believe that Maziar could perform that job due to his mistaken belief that ferry transportation required passengers to wear seatbelts. With respect to the mailroom position itself, Dr. Settle opined that "[t]he actual job duties appear appropriate." Nonetheless, Maziar believed that he would not have been able to perform the mailroom job. Maziar stated that he would not have taken the mailroom position because,

> [I]t's a permanent position that was only three or four people. There was heavy lifting in that job. I watched them as I sat down there as an officer. They do lift very large bags. There is tedious amounts of sorting. The three people that I saw there had been there over 20 years, and there were no positions that I could see that were permanent at any time while I worked there at McNeil Island. I didn't see any permanency there.

On June 30, 2005, Maziar filed a general maritime negligence claim against DOC, seeking compensation for the injuries he sustained when the ferry captain removed the chair. At that time, Maziar requested that his case be tried to a jury. On February 22, 2008, the trial court granted a motion for summary judgment brought by DOC, dismissing the lawsuit. Maziar appealed, and on August 25, 2009, Division Two reversed the trial court's ruling. Maziar v. Dep't of Corr., 151 Wn. App. 850, 216 P.3d 430 (2009) (Maziar I).[4]

---

[4] In Maziar I, Division Two addressed whether the Industrial Insurance Act, Title 51 RCW, precluded Maziar's claim and whether his claim was barred by sovereign immunity. 151 Wn. App. at 852. The court held in Maziar's favor on both issues, and remanded the case for trial. Maziar I, 151 Wn. App. at 860-61.

On September 15, 2011, Maziar, relying on the Washington Supreme Court's recent opinion in Endicott v. Icicle Seafoods, Inc., 167 Wn.2d 873, 224 P.3d 761 (2010), moved to strike the jury request. DOC opposed the motion. The trial court granted the motion and the parties tried the case to the bench.

The trial court found in favor of Maziar, and awarded $572,251.50 for pain and suffering and loss of enjoyment of life. However, the trial court found that Maziar had failed to mitigate his damages because "he did not attempt" the mailroom position "even for 10 or 15 minutes." Hence, the trial court awarded lost wages for only the periods of January to February 2003 and September to November 2003, for a total of $12,487.50. In total, the trial court awarded to Maziar $585,000[5] in damages. The trial court declined to award prejudgment interest on the damage amount.

DOC appeals from the judgment, assigning error to the trial court's order granting the motion to strike the jury. Maziar cross-appeals, challenging both the trial court's ruling that he failed to mitigate his damages and its decision not to award prejudgment interest.

II

DOC contends that the trial court erred by striking the jury and conducting a bench trial on Maziar's claim. This is so, it asserts, because the Washington Constitution and two state statutes guarantee to it the right to trial by jury in civil

---

[5] The judgment entered by the trial court states that the total principal judgment amount is $585,000. We are unaware of the source of the $261 not incorporated in the awards for lost wages and pain and suffering. Nevertheless, neither party assigns error to the trial court's calculation of damages. We thus do not disturb the trial court's calculation of Maziar's damages, as set forth in the judgment.

actions, including maritime cases. We agree that the right to a jury trial generally applies to maritime actions. We do not agree that DOC established that it possesses such a right.

A

Maritime causes of action are exclusively within the realm of federal law. Maziar I, 151 Wn. App. at 854. Nonetheless, an in personam maritime claim may be brought in state court pursuant to the "saving to suitors" clause of 28 U.S.C. § 1333(1). Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 445, 121 S. Ct. 993, 148 L. Ed. 2d 931 (2001). This statute states, in relevant part, "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333.

Generally, state courts deciding a case brought pursuant to the "saving to suitors" clause must apply substantive federal maritime law. Endicott, 167 Wn.2d at 879. However,

> a state court may "'adopt such remedies, and . . . attach to them such incidents, as it sees fit' so long as it does not attempt to make changes in the 'substantive maritime law.'" Madruga v. Superior Court of Cal., County of San Diego, 346 U.S. 556, 561 [74 S. Ct. 298, 301, 98 L. Ed. 290] (1954) (quoting Red Cross Line [v. Atlantic Fruit Co., 264 U.S. 109,] 124 [44 S. Ct. 274, 68 L. Ed. 582 (1924)]). That proviso is violated when the state remedy "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." Southern Pacific Co. v. Jensen, 244 U.S. 205, 216 [37 S. Ct. 524, 61 L. Ed. 1086] (1917).

Am. Dredging Co. v. Miller, 510 U.S. 443, 447, 114 S. Ct. 981, 127 L. Ed. 2d 285 (1994).

Although, historically, jury trials were not available in admiralty suits, nothing in federal maritime law forbids the use of a jury. Fitzgerald v. U.S. Lines Co., 374 U.S.16, 20, 83 S. Ct. 1646, 10 L. Ed. 2d 720 (1963). Instead, the possibility of trial by jury is one of the "remedies" saved to suitors by 28 U.S.C. § 1333.[6] Lewis, 531 U.S. at 454-55 ("Trial by jury is an obvious, but not exclusive, example of the remedies available to suitors."). As such, whether a party possesses the right to trial by jury in a maritime action is a question of state law. Linton v. Great Lakes Dredge & Dock Co., 964 F.2d 1480, 1487 (5th Cir. 1992). Thus, whether the parties in this case have the right to a jury trial is a question to be answered by application of Washington law.

Pursuant to the Washington Constitution, the right to a jury trial generally exists for common law actions but not for equitable actions. Bird v. Best Plumbing Grp., LLC, 175 Wn.2d 756, 769, 287 P.3d 551 (2012). However, maritime actions are neither legal nor equitable. Waring v. Clarke, 46 U.S. 441, 460, 5 How. 441, 12 L. Ed. 226 (1847); Phelps v. The City of Panama, 1 Wash.Terr. 518, 536 (1877) ("The constitution recognizes, in the language it employs, a triple distribution of jurisdiction into law, equity and admiralty. A suit in one of these jurisdictions is not a suit in another." (citation omitted)). Accordingly, we undertake a historical inquiry to determine whether there is a constitutional right to a jury in a maritime suit:

> [Washington courts] have long interpreted article I, section 21 as guaranteeing those rights to trial by jury that existed at the time of

---

[6] "Suitors" includes both the plaintiff and the defendant. Waring v. Clarke, 46 U.S. 441, 461, 5 How. 441, 12 L. Ed. 226 (1847).

the constitution's adoption in 1889. <u>Brown v. Safeway Stores, Inc.</u>, 94 Wn.2d 359, 365, 617 P.2d 704 (1980). Under this historical approach, "the court examines (1) whether the cause of action is one to which the right to a jury trial applied in 1889, and (2) the scope of the right to a jury trial." <u>Nielson v. Spanaway Gen. Med. Clinic, Inc.</u>, 135 Wn.2d 255, 266, 956 P.2d 312 (1998).

<u>Bird</u>, 175 Wn.2d at 768-69.

In 1889, admiralty jurisdiction was governed by the Judiciary Act of 1789. <u>Chappell v. Bradshaw</u>, 128 U.S. 132, 134, 9 S. Ct. 40, 32 L. Ed. 369 (1888). The Act stated, in relevant part, "[T]he district courts shall have . . . exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction . . . saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." Judiciary Act of 1789, ch. 20, § 9, 1 Stat. 73, 76-77 (footnote omitted). Although a maritime suit brought in state court was not (and is not) a common law action, the "saving to suitors" clause provided plaintiffs with all remedies that would otherwise be available in a common law action. <u>Knapp, Stout & Co. Co. v. McCaffrey</u>, 177 U.S. 638, 644, 20 S. Ct. 824, 44 L. Ed. 921 (1900); <u>see also</u> <u>The Moses Taylor</u>, 71 U.S. 411, 431, 18 L. Ed. 397, 4 Wall. 411 (1866) ("It is not a remedy in the common-law courts which is saved, but a common-law remedy."). "Remedy" was defined at the time as "[t]he means employed to enforce a right or redress an injury." BOUVIER'S LAW DICTIONARY 2870 (8th ed. 1914). In 1889, a jury trial was one of the "means employed to enforce a right or redress an injury" in common law actions in the Washington Territory. <u>Dacres v. Or. Ry. & Navigation Co.</u>, 1 Wash. 525, 529, 20 P. 601 (1889). Thus, in 1889, parties in maritime actions had the right to a jury

-7-

trial in suits brought pursuant to the "saving to suitors" clause. Therefore, upon statehood, article I, section 21 of the Washington Constitution continued to guarantee that right.

This conclusion is consistent with federal law. Although the federal constitution's Seventh Amendment does not apply to state court proceedings, the Washington Supreme Court has found Seventh Amendment jurisprudence to provide insight into the state jury trial guarantee. See e.g., Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wn.2d 255, 267-68, 956 P.2d 312 (1998); Sofie v. Fibreboard Corp., 112 Wn.2d 636, 647, 771 P.2d 711, 780 P.2d 260 (1989). Pursuant to federal court jurisprudence, the "saving to suitors" clause allows a plaintiff to sue in diversity, instead of admiralty, so long as the statutory requirements for so doing are met.[7] Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 362, 79 S. Ct. 468, 3 L. Ed. 2d 368 (1959). The United States Supreme Court has held that when a plaintiff brings a maritime claim under diversity jurisdiction, the Seventh Amendment right to a jury trial attaches. Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 360, 82 S. Ct. 780, 7

---

[7] The statute establishing federal diversity jurisdiction reads, in relevant part, as follows:
> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
> (1) citizens of different States;
> (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

L.Ed.2d 798 (1962). As the Supreme Court of Louisiana has articulated, "There simply is no apparent conceptual difference between an admiralty In personam claim brought under the saving to suitors clause as an ordinary civil action in federal court and one brought under the same clause as an ordinary civil action in state court." Lavergne v. W. Co. of N. Am., Inc., 371 So.2d 807, 810 (La. 1979). Thus, federal law supports the conclusion that the right to a jury trial is available in maritime actions brought in state court pursuant to the "saving to suitors" clause.

B

Maziar relies extensively on the Phelps decision for his assertion that there is no right to a jury trial in maritime actions, but that opinion does not compel the result he envisions.[8] In Phelps, the Supreme Court of the Washington Territory declared that "[n]either in the court below nor in this court, could [the plaintiff's admiralty suit] be tried by a jury." 1 Wash.Terr. at 536. However, the plaintiffs in Phelps did not bring their action pursuant to the "saving to suitors" clause. Rather, the territorial trial court heard the case in the same manner as would a federal district court sitting in admiralty.

Some history of the jurisdiction exercised by Washington's territorial courts is necessary to explain why this was so. In 1828, the United States Supreme Court was called upon to answer the question of whether a territorial court could

---

[8] Maziar also relies heavily on footnote 3 in Endicott for his assertion that there is no right to a jury trial in maritime actions. However, in that footnote, the court actually states that it would not decide the question, because the issue was not adequately briefed by the parties. Endicott, 167 Wn.2d at 886 n.3.

exercise jurisdiction over admiralty cases. Am. Ins. Co. v. 356 Bales of Cotton, 26 U.S. 511, 7 L. Ed. 242 (1828). In an opinion by Chief Justice John Marshall, the Court held that a territorial court had jurisdiction over admiralty claims. 356 Bales of Cotton, 26 U.S. at 546. The Court noted that the territorial courts, while not established as Article III courts, did possess such subject matter jurisdiction as was conferred by Congress. 356 Bales of Cotton, 26 U.S. at 546. As Chief Justice Marshall explained, "Although admiralty jurisdiction can be exercised in the states in those Courts, only, which are established in pursuance of the 3d article of the Constitution; the same limitation does not extend to the territories." 356 Bales of Cotton, 26 U.S. at 546.

Congress's power over territories of the United States is established in Article IV, section 3, of the United States Constitution, which states, in relevant part, "The congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." In 1853, Congress exercised this power in creating the territory of Washington. In "An Act to Establish the Territorial Government of Washington," otherwise known as the Organic Act, Congress created the territorial judiciary, vesting its power in "a supreme court, district courts, probate courts, and in justices of the peace." Organic Act, ch. 90, § 9, 10 Stat. 172 (1853). Congress therein conferred the jurisdiction of the courts as follows:

> [E]ach of the said district courts shall have and exercise the same jurisdiction in all cases arising under the constitution of the United States and the laws of said Territory, as is vested in the circuit and district courts of the United States; writs of error and appeal in all such cases shall be made to the supreme court of said Territory the

> same as in other cases. Writs of error, and appeals from the final
> decision of said supreme court, shall be allowed and may be taken
> to the supreme court of the United States in the same manner as
> from the circuit courts of the United States.

Organic Act, ch. 90, § 9, 10 Stat. 172. As the grant of jurisdiction decreed it to be the same as that exercised by Article III courts, a territorial court in Washington operated not only as would a state court, but also as would a federal court. See Barbara Bintliff, *A Jurisdictional History of the Colorado Courts*, 65 U. COLO. L. REV. 577, 588-89 (1994) ("In addition to being territorial courts, with jurisdiction like that of state courts, the supreme and district courts of Colorado Territory also served as the federal courts for the territory. Their jurisdiction was 'the same jurisdiction, in all cases arising under the constitution and laws of the United States, as is vested in the circuit and district courts of the United States.'" (quoting Organic Act, ch. 59, § 9, 12 Stat. 172 (1861))).

In Phelps, the territorial Supreme Court held that it and the trial court were acting with the jurisdictional authority of federal courts in deciding that dispute. In determining whether it had jurisdiction over admiralty claims, the court recognized that there were two possible bases for its jurisdiction:

> 1. . . . [A]dmiralty and maritime law remains a law of the Territory, and
> a case arising under it properly arises under the laws of the Territory.
> [Or],
> 2. . . . [A]dmiralty and maritime law is now operative within the Territory
> as a law of the United States, and a case arising under it arises under
> the laws of the United States.

Phelps, 1 Wash.Terr. at 529. The court determined the second basis to be the correct one for admiralty cases. Phelps, 1 Wash.Terr. at 529. Specifically, the

- 11 -

court held, "All cases here, therefore, which now arise under admiralty, or maritime law, are correctly to be styled cases arising under the laws of the United States. Of all such cases, the Territorial, District and Supreme courts have undoubted jurisdiction." Phelps, 1 Wash.Terr. at 529.

The trial court in Phelps was sitting not as a common law state court, but as a federal court in admiralty. Thus, it had no need to invoke the "saving to suitors" clause. As the trial court was exercising the equivalent of admiralty jurisdiction,[9] the Territorial Supreme Court was correct in its conclusion that the parties therein had no right to a jury trial. See Waring, 46 U.S. at 460 (Seventh Amendment does not apply to admiralty actions). The Pierce County Superior Court in this case, however, was not exercising federal admiralty jurisdiction.[10] Rather, it was exercising the authority conferred upon it by the "saving to suitors" clause. Therefore, contrary to Maziar's urgings, the Phelps decision does not support the position he asserts.

As the "saving to suitors" clause contemplates that the parties have access to common law remedies, and the right to a jury trial was a common law

---

[9] What today would be jurisdiction for claims brought pursuant to Federal Rules of Civil Procedure 9(h). This rule states:

    (1)    *How Designated.* If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

    (2)    *Designation for Appeal.* A case that includes an admiralty or maritime claim within this subdivision (h) is an admiralty case within 28 U.S.C. § 1292(a)(3).

[10] Nor could it. "[A] true 'admiralty' claim is never cognizable in state court." Linton, 964 F.2d at 1487.

- 12 -

remedy recognized in the Washington Territory in 1889, the constitutional right to a jury trial set forth in article I, section 21 is generally available to the parties in a maritime action brought in superior court.

C

The discussion in the preceding section does not resolve the issue presented, however. Establishing that Maziar, contrary to his belief, was entitled to a jury's resolution of his claim does not end our inquiry. Maziar, of course, was free to choose to not avail himself of the jury trial opportunity. The trial court erred in striking the jury, DOC contends, because *it* had a right to a jury trial and it objected to Maziar's request.

Both in the trial court and in its briefing on appeal, DOC contended that its right to a jury trial is guaranteed by article I, section 21 of the Washington Constitution and two nineteenth century statutes. We examine the constitutional question first.

The Washington Constitution provides that,

> The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of the jury in civil cases where the consent of the parties interested is given thereto.

CONST. art. I, § 21.

Article I of the Washington Constitution is entitled "Declaration of Rights." Section 21, guaranteeing the right of trial by jury, is a part of this Declaration. "In many states, including Washington, the Declaration of Rights is a source of *individual* protection that is the equal of the federal [Bill of Rights]. Not merely a

- 13 -

restatement of its national counterpart, Washington's Declaration of Rights contains unique and additional protections of *individual* rights." ROBERT F. UTTER & HUGH D. SPITZER, THE WASHINGTON STATE CONSTITUTION: A REFERENCE GUIDE 15 (2002) (emphasis added). In fact, "[t]he Washington Declaration of Rights is the primary guarantor of the rights of Washingtonians." Robert F. Utter, *Freedom and Diversity in a Federal System: Perspectives on State Constitutions and the Washington Declaration of Rights*, 7 U. PUGET SOUND L. REV. 491, 524 (1984). The Declaration addresses the "rights of a Washington citizen," not the rights of the State. Utter, supra, at 524.

Moreover, the Declaration of Rights itself provides that the state government is "established to protect and maintain *individual* rights." CONST. art. I, § 1 (emphasis added). As Justice Utter noted, "state constitutions were originally intended as the primary devices to protect individual rights." UTTER & SPITZER, supra, at 3. "[T]he fundamental purpose of our state's constitution" is "to protect and maintain individual rights." Utter, supra, at 507. Accordingly, the Washington Constitution delineates a set of limitations on state power, not a set of powers or rights granted to the State. UTTER & SPITZER, supra, at 2. It would require a strained reading of our Declaration of Rights to find that one of its provisions grants to the State any of the rights enumerated therein. Accordingly, article I, section 21 of the Washington Constitution does not grant the State the right to a jury trial.

Following oral argument in this court, DOC submitted an uninvited pleading, purportedly in response to a question from the panel concerning

whether our Supreme Court has ever held that *any* section of the Declaration of

Rights granted a right to the State.[11] In this postargument filing, DOC cited to

article I, section 16 of the state constitution and a Division Three opinion, Dep't of

Natural Res. v. Littlejohn Logging, Inc., 60 Wn. App. 671, 806 P.2d 779 (1991),

for the proposition that the State had been granted rights by the Declaration of

Rights. In fact, neither citation supports DOC's assertion.

DOC's citation to, and reliance upon, article I, section 16 is off the mark.

This provision reads:

> Private property shall not be taken for private use, except for
> private ways of necessity, and for drains, flumes, or ditches on or
> across the lands of others for agricultural, domestic, or sanitary
> purposes. No private property shall be taken or damaged for public
> or private use without just compensation having been first made, or

---

[11] Maziar timely moved to strike DOC's pleading, contending that it consisted of impermissible argument in violation of RAP 10.1(h) and 10.8 and was essentially an unsolicited supplemental brief. Maziar's contention is well taken. To the extent that DOC included argument in its submittal, Maziar's motion is granted.

However, with respect to DOC's citations to article I, section 16 and Dep't of Natural Res. v. Littlejohn Logging, Inc., 60 Wn. App. 671, 806 P.2d 779 (1991), Maziar's motion is denied. These two citations are at least tangentially related to the court's question at oral argument.

With respect to all other authorities cited by DOC in its late-filed pleading, Maziar's motion is granted. DOC cites to these authorities in an apparent effort to advance a new theory of its case. Neither these authorities nor this theory (which does not raise a constitutional question) were presented to the trial court (either in briefing or in oral argument), included in DOC's opening appellate brief, included in DOC's reply brief, or mentioned at oral argument. In a civil case, under circumstances in which a constitutional right is not at issue, an appellant cannot seek reversal of a trial court decision based on a legal theory not presented to the trial court. Fuqua v. Fuqua, 88 Wn.2d 100, 105, 558 P.2d 801 (1977). A corollary of this rule is that an appellant must include all theories upon which reversal is sought (accompanied by proper argument and citations to authority) in its opening brief on appeal. Dickson v. U.S. Fid. & Guar. Co., 77 Wn.2d 785, 787, 466 P.2d 515 (1970); In re Estates of Foster, 165 Wn. App. 33, 56, 268 P.3d 945 (2011). A legal theory that is raised for the first time in a reply brief is raised too late to warrant consideration. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); Dykstra v. County of Skagit, 97 Wn. App. 670, 676, 985 P.2d 424 (1999). The same rule applies to legal theories raised by an appellant for the first time at oral argument in this court. State v. Johnson, 119 Wn.2d 167, 170, 829 P.2d 1082 (1992). Obviously, a legal theory advanced by an appellant for the first time *after oral argument* completely deprives the respondent of any opportunity to defend the trial court's decisions, and comes too late to warrant consideration by the appellate court. Rafel Law Grp. PLLC v. Defoor, 176 Wn. App. 210, 225, 308 P.3d 767 (2013), review denied, 179 Wn.2d 1011 (2014).

paid into court for the owner, and no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in courts of record, in the manner prescribed by law. Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public: *Provided*, That the taking of private property by the state for land reclamation and settlement purposes is hereby declared to be for public use.

CONST. art. I, § 16.

Contrary to DOC's apparent belief, this provision did not *grant* the State the power of eminent domain. To the contrary, it gives individuals rights against the State's exercise of that power. Indeed, upon statehood, the State of Washington possessed the power of eminent domain independent of any express grant from any source:

The power of eminent domain is inherent in sovereignty and does not depend for its existence on a specific grant in the constitution. The provisions found in a state constitution *do not by implication grant the power to the government of a state*, but limit a power which otherwise would be without limit.

State ex rel. Eastvold v. Yelle, 46 Wn.2d 166, 168, 279 P.2d 645 (1955) (emphasis added) (citing State ex rel. Eastvold v. Superior Court, 44 Wn.2d 607, 609, 269 P.2d 560 (1954)); accord State v. King County, 74 Wn.2d 673, 675, 446 P.2d 193 (1968) ("The power of eminent domain is an attribute of sovereignty; it is an inherent power of the state.").

This view is in accord with similar pronouncements from the courts of sister states. Over 100 years ago, the Idaho Supreme Court declared, "When Idaho became a state, it at once necessarily assumed the power of eminent domain, one of the inalienable rights of sovereignty; and that right, we take it, may be exercised over all property within its jurisdiction." Hollister v. State, 9 Idaho 8, 71 P. 541, 543 (1903), overruled in part on other grounds by Smith v. State, 93 Idaho 795, 473 P.2d 937 (1970). More recently, the Alabama Supreme Court held, "The power of eminent domain does not originate in Article I, § 23 [of the Alabama Constitution]. Instead, it is a power inherent in every sovereign state. Section 23 merely places certain limits on the exercise of the power of eminent domain." Gober v. Stubbs, 682 So.2d 430, 433 (Ala. 1996). Indeed, it is widely accepted that the power of eminent domain is not conferred by constitution or statute, but rather is an inherent attribute of state sovereignty. See Sys. Components Corp. v. Fla. Dep't of Transp., 14 So.3d 967, 975 (Fla. 2009); Mayor & City Council of Baltimore City v. Valsamaki, 397 Md. 222, 241, 916 A.2d 324 (2007); R.I. Econ. Dev. Corp. v. The Parking Co., LP, 892 A.2d 87, 96 (R.I. 2006); Dep't of Transp. v. M.M. Fowler, Inc., 361 N.C. 1, 5, 637 S.E.2d 885 (2006); Norwood v. Horney, 110 Ohio St.3d 353, 363-64, 853 N.E.2d 1115 (2006); State by Dep't of Natural Res. v. Cooper, 152 W.Va. 309, 312, 162 S.E.2d 281 (1968); State Highway Dep't v. Smith, 219 Ga. 800, 803, 136 S.E.2d 334 (1964); People ex rel. Dep't of Pub. Works v. Chevalier, 52 Cal.2d 299, 304, 340 P.2d 598 (1959); State, by Burnquist v. Flach, 213 Minn. 353, 356, 6 N.W.2d 805 (1942); Liddick v. City of Council Bluffs, 232 Iowa 197, 215, 5 N.W.2d 361

- 17 -

(1942); <u>Phila. Clay Co. v. York Clay Co.</u>, 241 Pa. 305, 310, 88 A. 487 (1913); <u>Bd. of Water Comm'rs of City of Norwich v. Johnson</u>, 84 A. 727, 731 (Conn. 1912); <u>People v. Adirondack Ry. Co.</u>, 160 N.Y. 225, 237, 54 N.E. 689 (1899), <u>aff'd</u>, 176 U.S. 335, 20 S. Ct. 460, 44 L. Ed. 492 (1900); <u>Brown v. Beatty</u>, 1857 WL 4130, at *9 (Miss.Err. & App.); <u>In re State</u>, 325 S.W.3d 848, 858 (Tex.App.-Austin 2010); <u>City of Sunland Park v. Santa Teresa Servs. Co.</u>, 134 N.M. 243, 252, 75 P.3d 843 (N.M.App. 2003); <u>County Highway Comm'n of Rutherford County v. Smith</u>, 61 Tenn.App. 292, 297-98, 454 S.W.2d 124 (1969); <u>State by State Highway Comm'r v. Union County Park Comm'n</u>, 89 N.J.Super. 202, 211, 214 A.2d 446 (1965).

Contrary to DOC's present assertion, "[t]he *sole purpose* of [article I, section 16] is to define the limitations placed upon the inherent power of a governing body in dealing with the governed in this regard." <u>Arnold v. Melani</u>, 75 Wn.2d 143, 151, 449 P.2d 800, 450 P.2d 815 (1968) (emphasis added). Properly understood, article I, section 16 grants rights to Washington citizens in order to ameliorate the harshness of the State's unfettered power of eminent domain. It does not grant rights to the State.

DOC's citation to the <u>Littlejohn Logging</u> decision is similarly unavailing. The question now before us was not addressed in that case. Rather, in <u>Littlejohn Logging</u>, Division Three held that because "DNR's action was legal in nature," "the parties had a right to a jury trial." 60 Wn. App. at 674. From the decision it is clear that each party in <u>Littlejohn Logging</u> assumed that it possessed a right to a jury trial, so long as the cause of action asserted therein was subject to that

right. The Court of Appeals merely determined that it was. Moreover, the right to a jury trial was asserted on appeal by Littlejohn Logging, not by the State. Littlejohn Logging, 60 Wn. App. at 673. The decision of the appellate court in that case in no way assists with the inquiry in which we are presently engaged.

Article I of the Washington Constitution does not grant jury trial rights in civil cases to the State. [12]

D

Therefore, if DOC has a right to a jury trial in this matter, it must be a right provided by statute. In the trial court and in its appellate briefing, DOC contended that two territorial statutes, now codified as RCW 4.40.060[13] and 4.44.090,[14] both grant it the right to a jury trial. RCW 4.40.060, a territorial statute originally enacted in 1854, states in relevant part, "An issue of fact, in an action for the recovery of money only, or of specific real or personal property shall be tried by a jury." RCW 4.44.090, a territorial statute originally enacted in

---

[12] In State v. Oakley, 117 Wn. App. 730, 734, 72 P.3d 1114 (2003), we held that RCW 3.66.010 and 10.04.050 unambiguously granted the State a right to a jury trial in a criminal case. A corollary of that holding is that only the individual, and not the State, is granted the right to trial by jury in article I, section 22 of the state constitution, which deals with criminal trials.

[13] "An issue of fact, in an action for the recovery of money only, or of specific real or personal property shall be tried by a jury, unless a jury is waived, as provided by law, or a reference ordered, as provided by statute relating to referees." RCW 4.40.060.

The subsequent statute states, "Every other issue of fact shall be tried by the court, subject, however, to the right of the parties to consent, or of the court to order, that the whole issue, or any specific question of fact involved therein, be tried by a jury, or referred." RCW 4.40.070.

[14] "All questions of fact other than those mentioned in RCW 4.44.080, shall be decided by the jury, and all evidence thereon addressed to them." RCW 4.44.090.

RCW 4.44.080 states, "All questions of law including the admissibility of testimony, the facts preliminary to such admission, and the construction of statutes and other writings, and other rules of evidence, are to be decided by the court, and all discussions of law addressed to it."

- 19 -

1869, states, "All questions of fact other than those mentioned in RCW 4.44.080, shall be decided by the jury, and all evidence thereon addressed to them."

It is clear that, in 1854 and 1869, the legislature that passed these statutes was not granting a jury trial right to the State of Washington. This is clear because—in 1854 and 1869—there *was* no State of Washington.

Moreover, in 1854 and in 1869, there was no such thing as a civil tort claim against the State. "A familiar and fundamental rule for the interpretation of a statute is that it is presumed to have been enacted in the light of existing judicial decisions that have a direct bearing upon it." Kelso v. City of Tacoma, 63 Wn.2d 913, 917, 390 P.2d 2 (1964). For example, in 1902, our Supreme Court held that a statute passed in 1895 dictating the proper forum for claims against the State did not create any new causes of action against the State. Billings v. State, 27 Wash. 288, 291-93, 67 P. 583 (1902). In Billings, the plaintiff had attempted to assert a negligence claim against the State pursuant to a statute which provided that, "'[a]ny person or corporation having any claim against the state of Washington shall have the right to begin an action against the state in the superior court of Thurston county.'" Billings, 27 Wash. at 291 (quoting Bal. Code § 5608). Our Supreme Court held that this statute did not abrogate the State's sovereign immunity. Billings, 27 Wash. at 293. Rather, the State "has not consented, either expressly or impliedly, to become responsible for the misconduct or negligence of its officers or agents; and, in the absence of a statute making it liable in damages therefor, no such action as the present one can be maintained against the state." Billings, 27 Wash. at 293. Similarly, RCW

- 20 -

4.40.060 and 4.44.090 were enacted at a time when the sovereign enjoyed immunity against civil tort claims. Both statutes must be read in light of this fact.

Our Supreme Court has previously interpreted one of the inter-related statutes cited by DOC. In Dexter Horton Building Company v. King County, 10 Wn.2d 186, 116 P.2d 507 (1941), the court clarified the scope of Rem. Rev. Stat., § 314, now codified as RCW 4.40.060. In that case, the court found authoritative the Laws of 1873, chapter 15, § 206, which declared that "*nothing in the civil practice act,*" including Rem. Rev. Stat., § 314, "*shall be so construed as to restrict the chancery powers of the judges, or to authorize the trial of any issue by a jury when the relief sought is predicated upon a doctrine which is inherently in equity.*" Dexter Horton, 10 Wn.2d at 193. Hence, the court held that "[i]n the light of that declaration it is clear that the provision for jury trial on issues of fact for the recovery of money only applies to common-law actions." Dexter Horton, 10 Wn.2d at 193. There was, of course, no such thing as a civil tort claim against the sovereign at common law. "The doctrine of governmental immunity springs from the archaic concept that 'The King Can Do No Wrong.'" Kelso, 63 Wn.2d at 914. This doctrine has long been considered part of the common law of Washington. See Billings, 27 Wash. at 293. Thus, although generally a negligence claim is a common law action, a civil tort action against the sovereign was *not* an action available at common law. Nineteenth century statutes must be construed with this in mind.

As the Dexter Horton case demonstrates, Washington's statehood and the adoption of the Washington Constitution did not expand RCW 4.40.060 and

RCW 4.44.090 beyond their then-existing reach. Rather, the constitution provided for the continuation of those statutes as they were then understood. CONST. art. XXVII, § 2; State v. Ellis, 22 Wash. 129, 133, 60 P. 136 (1900) overruled in part on other grounds by State v. Lane, 40 Wn.2d 734, 738, 246 P.2d 474 (1952). At the time these statutes were enacted, neither applied to the State of Washington in civil tort actions, both because the State of Washington did not then exist and because sovereign governments then enjoyed immunity from such suits. Statehood and its concomitant adoption of the Washington Constitution did not change these statutes' application and the legislature has never amended them so as to provide a right to jury trial to the State in civil tort cases.

Moreover, in 1854 and 1869, it is implausible that the territorial legislature intended, by statute, to grant the right to a jury trial in tort claims against a sovereign. "A court's goal in construing a statute is to determine and give effect to the legislature's intent." TracFone Wireless, Inc. v. Dep't of Revenue, 170 Wn.2d 273, 281, 242 P.3d 810 (2010) (citing Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010); Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). The relevant inquiry is directed to the intent of the legislature that passed the act in question. Pasado's Safe Haven v. State, 162 Wn. App. 746, 754 n.6, 259 P.3d 280 (2011). During the territorial period, the territorial legislature was sworn to uphold and subject to

only one constitution—the federal constitution.[15] Organic Act, ch. 90, § 6, 10 Stat. 172. The federal constitution's Seventh Amendment did not then, and does not now, provide the right to a jury trial for civil tort claims against the sovereign. Indeed, "[i]t hardly can be maintained that under the common law in 1791 jury trial was a matter of right for persons asserting claims against the sovereign." Galloway v. United States, 319 U.S. 372, 388, 63 S. Ct. 1077, 87 L. Ed. 1458 (1943). "Neither the Amendment's terms nor its history suggest it was intended to extend to such claims." Galloway, 319 U.S. at 388 n.17.

Viewed in the context of the times, there is little doubt that neither the 1854 territorial legislature nor the 1869 territorial legislature was contemplating the statutes at issue being applied to tort claims against the sovereign. Such a state of affairs would have been unknown to legislators of that era. If the right to a jury trial in a tort case was to be extended to the State by statute, it must have been the act of some later legislature. But DOC pointed to no such later enactment in its trial court briefing, nor in its opening or reply briefs on appeal.[16]

As the Washington Constitution's Declaration of Rights does not grant rights to the State, and DOC did not identify a statutory basis for its asserted right to a jury trial in an action of this type, the trial court did not err by striking the jury

---

[15] Additionally, all territorial laws were subject to approval by Congress. Organic Act, ch. 90, § 6, 10 Stat. 172.

[16] DOC also cites to Civil Rule 38(a) for the proposition that the trial court erred by striking the jury in this case. However, CR 38(a) is a court rule, not a statute. Further, CR 38(a) states, "The right of trial by jury as declared by article I, section 21 of the constitution or as given by a statute shall be preserved to the parties inviolate." This rule does not grant a right to a jury trial; rather, it protects such rights as are provided by the constitution or by statute. Because DOC did not establish that it had either a constitutional or statutory right to a jury trial, CR 38(a) did not compel the trial judge to deny Maziar's motion to strike the jury.

upon Maziar's request.[17]  The case was properly tried to the bench.

III

In his cross appeal, Maziar contends that the trial court erred by declining to award prejudgment interest.  This is so, he asserts, because federal maritime law compels the award of prejudgment interest.  DOC defends the trial court's decision, arguing that prejudgment interest is not permitted in this case because the State has not waived its sovereign immunity against claims for prejudgment interest.  The trial court ruled properly.

We review the award or denial of prejudgment interest for an abuse of discretion.  Polygon Nw. Co. v. Am. Nat'l Fire Ins. Co., 143 Wn. App. 753, 790, 189 P.3d 777 (2008).  "[A] ruling based on an erroneous legal interpretation is necessarily an abuse of discretion."  Endicott, 167 Wn.2d at 886 (citing Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858 P.2d 1054 (1993)).

"Prejudgment interest in maritime cases is substantive and so is controlled by federal law."  Endicott, 167 Wn.2d at 886 (citing Militello v. Ann & Grace, Inc., 411 Mass. 22, 576 N.E.2d 675, 678 (1991)).  In admiralty cases,

> "prejudgment interest must be granted unless peculiar circumstances justify its denial." Dillingham Shipyard v. Associated Insulation Co., 649 F.2d 1322, 1328 (9th Cir.1981). . . . When a district court "fail[s] to articulate any reason why" prejudgment interest was denied, "the district court abuse[s] its discretion in

---

[17] In this case, we resolve the questions presented by the issues as litigated by the parties based upon the authorities properly presented to the trial court and to us.  Nothing herein should be read to foreclose future arguments premised upon statutes not presented to us in this case.

refusing to award prejudgment interest." Edinburgh Assurance Co. v. R.L. Burns Corp., 669 F.2d 1259, 1263 (9th Cir. 1982). Vance v. Am. Haw. Cruises, Inc., 789 F.2d 790, 795 (9th Cir. 1986) (alterations in original). Here, the trial court denied prejudgment interest without giving a reason. Although the trial court should have articulated a reason for its decision, it did not abuse its discretion by declining to award prejudgment interest.

In Norris v. State, 46 Wn. App. 822, 825, 733 P.2d 231 (1987), Division Two held that, "[t]he State has not consented to prejudgment interest on tort claims against it." Eighteen years later, Division Two extended this holding to apply to a suit brought under the Jones Act and federal maritime law. Foster v. Dep't of Transp., 128 Wn. App. 275, 279, 115 P.3d 1029 (2005).

The court in Foster declined to consider whether federal maritime law superseded the State's sovereign immunity, finding instead that prejudgment interest is not awardable in mixed maritime and Jones Act suits.[18] 128 Wn. App. at 279. We take up the question that Foster left open and hold that federal maritime law does not supersede a state's sovereign immunity. The United States Supreme Court has previously held that states are immune under the Eleventh Amendment from admiralty and maritime suits brought in federal court. Welch v. Tex. Dep't of Highways & Pub. Transp., 483 U.S. 468, 472-73, 107 S. Ct. 2941, 97 L. Ed. 2d 389 (1987). The United States is also immune from admiralty suits, unless it has waived its immunity. See 46 U.S.C. § 742 (waiving sovereign immunity for in personam admiralty suits). Therefore, sovereign

---

[18] This portion of Foster was later overruled by our Supreme Court in Endicott. 167 Wn.2d at 888.

immunity is not incompatible with federal maritime law. As such, federal maritime law does not supersede state sovereign immunity.

Because the State has never waived its sovereign immunity in this regard, the trial court did not abuse its discretion by declining to award prejudgment interest.

## IV

Maziar additionally contends that the trial court erred by finding that he had failed to mitigate his damages. This is so, he asserts, because he reasonably believed that he would be unable to perform the mailroom job. The trial court's ruling is amply supported by the record.

Whether a party has mitigated damages is a question of fact. TransAlta Centralia Generation LLC v. Sicklesteel Cranes, Inc., 134 Wn. App. 819, 826, 142 P.3d 209 (2006). "Appellate courts apply the substantial evidence standard of review to findings of fact made by the trial judge." In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). Substantial evidence is defined as

> a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). If the standard is satisfied, a reviewing court will not substitute its judgment for that of the trial court even though it might have resolved a factual dispute differently. Croton Chem. Corp. v. Birkenwald, Inc., 50 Wn.2d 684, 314 P.2d 622 (1957).

Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003). We will "'not substitute [our] judgment for the trial court's, weigh the evidence, or adjudge witness credibility.'" Rockwell, 141 Wn. App. at 242 (quoting In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999)).

"The doctrine of avoidable consequences, also known as mitigation of damages, prevents recovery for damages the injured party could have avoided through reasonable efforts." Cobb v. Snohomish County, 86 Wn. App. 223, 230, 935 P.2d 1384 (1997) (citing Kloss v. Honeywell, Inc., 77 Wn. App. 294, 301, 890 P.2d 480 (1995)). Where the plaintiff claims lost wages, such damages are "not recoverable to the extent plaintiff reasonably failed to mitigate his damages by earning whatever he could at another occupation." Kubista v. Romaine, 87 Wn.2d 62, 67, 549 P.2d 491 (1976). The burden of proving a failure to mitigate is on the party who caused the damages. Cobb, 86 Wn. App. at 230 (citing Bernsen v. Big Bend Elec. Coop., 68 Wn .App. 427, 435, 842 P.2d 1047 (1993)).

In this case, the trial court found that Maziar did not mitigate his damages because he declined to attempt to perform the functions of a mailroom clerk at DOC. Based on the evidence presented at trial, a rational person could conclude that Maziar did not reasonably attempt to mitigate his damages because he declined to take the mailroom job. Although Dr. Settle advised Maziar not to take the job, his advice was based on the mistaken belief that ferry passengers were required to wear seatbelts. In fact, Dr. Settle believed that Maziar could perform the functions of a mailroom clerk. Maziar's reasons for turning down the job were based solely on his personal observations. This evidence sufficiently supports the trial court's finding that Maziar acted unreasonably by turning down the mailroom position. The trial court did not err by concluding that Maziar failed to mitigate his damages.

Affirmed.

We concur: